**FRIENDS OF FREDERICK SEIG GROVE # 94, Plaintiff,**

**v.**

**SONOMA COUNTY WATER AGENCY, Occidental County Sanitation District, County of Sonoma, Does 1–10, Defendants.**

**No. C 00–2258 CRB.**

United States District Court, N.D. California.

Dec. 12, 2000.

David J. Weinsoff, Law Office of David Weinsoff, Fairfax, CA, for plaintiff.

David McFadden County Counsel's Office County of Sonoma Santa Rosa, CA, John J. Powers, Preuss Shanagher Zvoleff & Zimmer LLP, San Francisco, CA, for defendants.

## ORDER REGARDING DEFENDANTS' MOTION TO DISMISS

BREYER, District Judge.

Now before the Court are the defendants' motions to dismiss the plaintiff's

complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Having considered the parties' papers and with the benefit of oral argument on December 8, 2000, the defendants' Rule 12(b)(1) motion is GRANTED IN PART, DENIED IN PART, and taken under submission in part, and the defendants' Rule 12(b)(6) motion is DENIED. The Court also orders the parties to proceed with this litigation as described at the end of this order.

## BACKGROUND

The present dispute involves a wastewater treatment plant ("the treatment plant" or simply "the plant") located in the unincorporated community of Occidental in Sonoma County. The defendant Occidental County Sanitation District ("OCSD") is the owner of the treatment plant; the defendant Sonoma County Water Agency ("SCWA") operates the treatment plant under a contract between the defendants. The plaintiff Friends of Frederick Seig Grove # 94 ("Friends")[1] is an unincorporated nonprofit public interest group that contends that the defendants have violated the Clean Water Act ("CWA"), 33 U.S.C. § 1251 *et seq.*, in their operation of the treatment plant.

## I. THE HISTORY OF THE TREATMENT PLANT

The treatment plant was originally constructed in the late 1950s and serves approximately seventy customers, most of whom are individual residents. The plant discharges treated wastewater pursuant to its National Pollutant Discharge Elimination System permit (the "NPDES permit"). The NPDES permit was issued by the California Regional Water Quality Control Board, North Coast Region ("the Regional Board").

Since January 1997, the Regional Board has issued four enforcement orders against OCSD and SCWA involving violations of the NPDES permit. The Regional Board issued the first order on January 23, 1997 for violations of the NPDES permit. That order, Cease and Desist Order ("CDO") No. 97–6, identified certain violations of the NPDES permit for discharging treated effluent into local streams. CDO No. 97–6 also directed the defendants to prepare a report detailing potential upgrades to the treatment plant—such as improving the plant's storage capacity—to prevent future violations. *See* Request for Judicial Notice in Support of Motion ("RJN"), Sept. 27, 2000, Ex. 1, at 3.

The Regional Board issued the second and third orders on August 27, 1997, when the Regional Board replaced CDO No. 97–6 with CDO No. 97–74 and Time Schedule Order No. 97–75 (the "TSO"). CDO No. 97–74 requires OCSD and SCWA to: (1) implement an interim solution to prevent the discharge and other violations; (2) submit a report outlining long-term solutions for the violations; (3) implement a "Capital Improvement Plan" ("CIP") to improve the treatment plant's facilities by: (a) developing alternative plans, (b) presenting them to rate payers, (c) selecting a plan, (d) obtaining the necessary California Environmental Quality Act ("CEQA") certification, (e) awarding a bid for the selected CIP, and (f) completing construction on the treatment plant. *See* RJN, Ex. 2 (containing CDO No. 97–74), at 3–4. CDO No. 97–74 also provides that the defendants must certify the CIP in accordance with the CEQA by January 1, 2000 and must complete the necessary construction by September 1, 2002. *See id.* The TSO establishes civil penalty assessment dates and amounts in the event that OCSD and SCWA fail to satisfy the deadlines outlined in the two orders. The TSO also notes, "It is anticipated that the new [TSO] is likely to be violated." *See* RJN, Ex. 3 (containing the TSO), ¶ 9.

---

1. Neither the plaintiff nor the defendants are consistent in their spelling of "Seig," which they occasionally spell "Sieg." For purposes of this Order, the Court will use "Seig," which is the spelling used on the docket report for the case.

Finally, on October 23, 1997, the Regional Board issued Administrative Civil Liability Order No. 97–126 (the "ACLO"). Pursuant to section 13385 of the California Water Code, the ACLO imposed a $25,000 penalty on OCSD and SCWA for violations of the NPDES permit from May 1993 to July 1997. The order also assessed a $50,000 penalty to be suspended upon the condition that the defendants certify a CIP that complies with the CEQA by January 1, 2000. Similarly, the ACLO included another $50,000 penalty to be suspended if the defendants complete construction of the CIP by September 1, 2002. *See* RJN, Ex. 4 (containing the ACLO), at 7.

## II.  THE NCRW SUIT AGAINST THE DEFENDANTS

On August 12, 1997, the environmental group Northern California River Watch ("NCRW") filed a complaint against OCSD and SCWA pursuant to the citizen suit provisions of the CWA. *See* No. C 97–2962 CRB ("the NCRW suit"). The complaint, filed in federal court, sought civil penalties and injunctive and declaratory relief for violations of the NPDES permit from May 1993 to July 1997.

On January 30, 1998, this Court dismissed the civil penalty claim in the complaint as barred pursuant to 33 U.S.C. § 1319(g)(6)(A)(ii), which precludes civil penalties when a state diligently prosecutes environmental violations. The Court declined, however, to dismiss NCRW's request for injunctive and declaratory relief.

NCRW then filed a first amended complaint against the defendants for violations

of the NPDES permit since July 1997. On October 6, 1998, NCRW, OCSD, and SCWA entered into a settlement agreement resolving the claims in the NCRW suit. The agreement acknowledges that the defendants have begun an environmental review process to remedy future violations of the NPDES permit. The settlement also prohibits NCRW from suing the defendants for environmental violations that occurred either before the execution of the agreement or for two years afterwards.[2]

## III.  THE PROCEDURAL POSTURE OF THE PRESENT SUIT

On March 15, 2000, the defendants received a letter from an attorney representing "Frederick Seig Grove # 94 of the United Ancient Order of Druids ('the Druids')." RJN, Ex. 9 ("March 15 notice"), at 1. The letter provided notice that the Druids intended to file suit against OCSD and SCWA under the CWA for the violations identified in the Regional Board's orders. *See id.*

On April 11, 2000, the defendants received an amended notice of violations and intent to file suit, this time from the plaintiff "Friends of Frederick Seig Grove # 94 ('Friends')." RJN, Ex. 10 ("April 11 notice"), at 1. Except for the change in the identity of the plaintiff,[3] the amended notice was identical to the original notice received by the defendants on March 15, 2000.[4] For the purposes of this Order, the Court will regard the April 11 notice as the effective letter.

2. NCRW also filed a similar suit against SCWA and Sonoma Valley Sanitation District for violations of an NPDES permit and the CWA. *See* No. C 97–4263 CRB.

3. The record does not clearly reflect why the amended notice letter was written on behalf of Friends while the original letter was sent on behalf of the Druids. The defendants suggest that "the Druids have not authorized commencement of a citizen suit" against the defendants. Defendants' Motion to Dismiss ("Motion"), Dec. 1, 2000, at 5 n. 1 (citing a

telephone conversation on September 11, 2000 with a state Druid official).

4. The Court observes that Exhibit 10 (containing the April 11 notice) is missing page five. However, since the March 15 notice and the April 11 notice are substantially identical, the Court assumes for the purposes of this Order that the missing portion of the April 11 notice contains material that is essentially identical to the corresponding section of the March 15 notice.

In its April 11 notice, the plaintiff informed the defendants that it believed that OCSD and SCWA had violated the NPDES permit "on numerous separate occasions from January 1, 1995 to the date of this notice and that those violations are continuing." *Id.* at 2. The April 11 notice observed that the violations of the NPDES permit "are evidenced in [OCSD's] self monitoring data" submitted to the Regional Board. *Id.; see id.* at 4 ("The enumerated violations are based upon review of monitoring data submitted by [OCSD] to the Regional Board."); *id.* (indicating that the notice also covered "any and all violations which may have occurred but for which data may not have been available or submitted or apparent from the face of the report or data submitted by [OCSD] to the Regional Board."). The April 11 notice listed 326 violations of the provisions of the NPDES permit, but it failed to specifically identify the dates on which any of the alleged violations occurred.

On June 26, 2000, Friends filed the instant action, a citizen suit under the CWA, alleging violations of the defendants' NPDES permit. The complaint incorporates by reference the violations outlined in the March 15 and April 11 letters and information contained in the NPDES permit.

## DISCUSSION

The defendants have moved pursuant to Federal Rule of Civil Procedure 12(b) to dismiss Friends' complaint on three grounds: (1) the Court lacks subject matter jurisdiction because the plaintiff's sixty-day notice was deficient; (2) the Court lacks subject matter jurisdiction because the plaintiff's action is barred due to prior, continuing enforcement actions; and (3) the plaintiff has failed to state a claim for injunctive relief.

The defendants have identified their entire motion as based on Rule 12(b)(6). However, the notice provision and the civil penalty bar limit this Court's subject matter jurisdiction, so those elements of the defendants' motion are more properly considered as Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction. The defendants' third argument—that the plaintiff's request for injunctive relief fails to state a claim—is appropriately labeled a Rule 12(b)(6) motion to dismiss. As described in Section I.B *infra*, this is not a distinction without a difference.

## I. LEGAL STANDARDS FOR RULE 12(b) MOTIONS

### A. Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim

A Rule 12(b)(6) motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted. *See Gilligan v. Jamco Dev. Corp.,* 108 F.3d 246, 249 (9th Cir.1997). Under Rule 12(b)(6), a complaint should not be dismissed unless a plaintiff can prove "no set of facts in support of his claim that would entitle him to relief." *Parks Sch. of Bus., Inc. v. Symington,* 51 F.3d 1480, 1484 (9th Cir.1995). The court must take the non-moving party's allegations as true and construe those allegations in the light most favorable to the non-moving party. *See id.* The court must also draw all reasonable inferences in favor of the non-moving party. *See Usher v. City of Los Angeles,* 828 F.2d 556, 561 (9th Cir.1987).

### B. Rule 12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction

Pursuant to Rule 12(b)(1), a district court must dismiss an action if it lacks jurisdiction over the subject matter of the suit. Unlike a motion under Rule 12(b)(6), however, the Court is not required to accept all of the non-moving party's factual allegations as true. Instead, the party moving under Rule 12(b)(1) may submit evidence indicating that the court lacks subject matter jurisdiction. "It then becomes necessary for the party opposing the motion to present affidavits or any other evidence necessary to satisfy its bur-

den of establishing that the court, in fact, possesses subject matter jurisdiction." *Association of Am. Med. Colleges v. United States,* 217 F.3d 770, 778 (9th Cir.2000) (noting that a district court "obviously does not abuse its discretion by looking to this extra-pleading material in deciding the issue, even if it becomes necessary to resolve factual disputes").

## II. WHETHER THE COURT LACKS SUBJECT MATTER JURISDICTION

The defendants have moved to dismiss the plaintiff's claim for lack of subject matter jurisdiction on two grounds: (1) the plaintiff's sixty-day notice was deficient; and (2) the plaintiff's action is barred due to prior, continuing enforcement actions.

### A. The Citizen Suit Notice Requirement

First, the defendants assert that this Court lacks subject matter jurisdiction over the plaintiff's claim because the plaintiff has failed to comply with the notice requirement of the citizen suits provision of the CWA. *See* 33 U.S.C. § 1365 (West 2000). Under section 1365(b)(1)(A), no action may be commenced as a citizen suit "prior to sixty days after the plaintiff has given notice of the alleged violation (i) to the Administrator [of the U.S. Environmental Protection Agency], (ii) to the State in which the alleged violation occurs, and (iii) to any alleged violator of the standard, limitation, or order ..." Section 1365(b) also indicates that notice "shall be given in such manner as the Administrator shall prescribe by regulation." The CWA notice regulation provides that the notice shall include "sufficient information to permit the recipient to identify the specific standard, limitation, or order alleged to have

been violated, the activity alleged to constitute a violation, the person or persons responsible for the alleged violation, the location of the alleged violation, the date or dates of such violation," and the contact information for the person giving notice. 40 C.F.R. § 135.3(a) (West 2000) ("the CWA regulation").

The U.S. Supreme Court has indicated that a plaintiff must strictly comply with the citizen suit notice provision before she can bring suit; if a plaintiff fails to provide adequate notice, a district court lacks jurisdiction. *See Hallstrom v. Tillamook County,* 493 U.S. 20, 26, 110 S.Ct. 304, 107 L.Ed.2d 237 (1989) (observing that the notice requirement in section 1365 should be applied literally and enforced strictly); *Washington Trout v. McCain Foods, Inc.,* 45 F.3d 1351, 1354 (9th Cir.1995) (citing *Hallstrom* ); *Public Interest Research Group of New Jersey, Inc. v. Hercules, Inc.,* 50 F.3d 1239, 1246 (3d Cir.1995) (*"PIRG of New Jersey"*) (observing that the legislative history of the notice provision "indicates that Congress sought here to strike a balance between providing notice recipients with sufficient information to identify the basis of the citizen's claim and not placing an undue burden on the citizen").[5]

The defendants assert that the April 11 notice did not include enough information to permit them to specifically identify the dates of alleged violations. OCSD and SCWA note that the monitoring data cited in the plaintiff's April 11 notice incorporates over five years of submissions to the Regional Board. Citing *California Sportfishing Protection Alliance v. City of West Sacramento,* 905 F.Supp. 792, 799 (1995) (*"California Sportfishing"*), the defendants argue that the plaintiff's notice should have included a specific list of al-

---

5. The *Hallstrom* Court did not explicitly determine whether the CWA's notice requirement is a jurisdictional or procedural bar. *See Hallstrom,* 493 U.S. at 31, 110 S.Ct. 304 ("In light of our literal interpretation of the statutory requirement, we need not determine whether [the notice provision] is jurisdictional

in the strict sense of the term."). However, in *Washington Trout,* the Ninth Circuit clarified that a plaintiff's failure to comply with the notice requirement means that a district court lacks subject matter jurisdiction. *See Washington Trout,* 45 F.3d at 1355.

leged violations and the dates on which the violations occurred in order to point the defendants to the precise violations for which the plaintiff seeks relief. *See* Motion at 7 ("The suggestion that recipients review over five years of data within a sixty day period to themselves discern what is being complained about is inconsistent with the notice provisions of the Act."). In the defendants' view, many of the violations may have already been prosecuted by the Regional Board and the defendants cannot fully defend themselves without more information from the plaintiff.

The plaintiff counters that the CWA regulation does not require a prospective plaintiff to provide an exhaustive list of all the alleged violations and the dates on which they occurred. Instead, Friends claims, a plaintiff need only supply a range of dates within which the violations occurred. According to the plaintiff, alerting the defendants to that general period is sufficient to enable the defendants to identify the dates of the alleged violations.

A review of the case law interpreting the CWA notice requirement is helpful in determining how precise the plaintiff's notice must be before the plaintiff can bring a citizen suit. The Supreme Court's decision in *Hallstrom v. Tillamook County* is particularly instructive in outlining the rationale behind the sixty-day notice provision.[6] In *Hallstrom*, the plaintiffs had failed to notify the EPA and the state Department of Environmental Quality that they intended to bring a citizen suit. The district court declined to dismiss the plaintiffs' suit, finding that the plaintiffs had cured any defect in notice and that the agencies could still respond to the suit within sixty days. *See Hallstrom*, 493 U.S. at 23–24, 110 S.Ct. 304. The Ninth Circuit reversed the district court, finding that the plaintiffs' failure to comply with the sixty-day notice requirement deprived the district court of subject matter jurisdiction. *See id.* at 24, 110 S.Ct. 304.

The Supreme Court affirmed the Ninth Circuit and held that the CWA's notice provision was a mandatory prerequisite to bringing suit. The Court indicated that a district court could not permit a plaintiff to circumvent the requirement by simply ordering a sixty-day stay while the plaintiff provided proper notice. *See id.* at 26, 110 S.Ct. 304 ("The language of this provision could not be clearer."); *id.* at 31, 110 S.Ct. 304 (holding that a district court may not disregard the notice requirement at its discretion). The Court flatly rejected the claims that the notice requirement "should be given a flexible or pragmatic construction" or should be subject to equitable modification and cure, *See id.* at 26–27, 110 S.Ct. 304.

Moreover, the Court found that a literal interpretation of the notice provision was consistent with Congress's goal of striking "a balance between encouraging citizen enforcement of environmental regulations and avoiding burdening the federal courts with excessive numbers of citizen suits." *Id.* at 29, 110 S.Ct. 304. In the Court's view, a strictly construed notice requirement preserved that balance in two ways: by giving government entities the first opportunity to enforce environmental regulations and by giving the alleged violator a chance to comply with the CWA, thereby making a citizen suit unnecessary. *See id.* at 29, 110 S.Ct. 304 ("This policy would be frustrated if citizens could immediately

---

**6.** The *Hallstrom* Court interpreted a different citizen suit notice provision than the one at issue in this case, but the provisions are virtually identical and were modeled after each other. Cases interpreting the citizen suit notice provision involved here regularly cite *Hallstrom* as binding authority. *See, e.g., Washington Trout*, 45 F.3d at 1353 n. 3 (noting that section 1365 is modeled after the citizen suit provision interpreted in *Hallstrom*); *PIRG of New Jersey*, 50 F.3d at 1246 (observing that *Hallstrom* interpreted the citizen suit provisions of the Clean Air Amendments of 1970, which "served as the precursor to the analogous citizen suit provisions in the Clean Water Act and the Resource Conservation and Recovery Act of 1976").

bring suit without involving federal or state enforcement agencies. Giving full effect to the words of the statute preserves the compromise struck by Congress."); *see also Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 120 S.Ct. 693, 701, 145 L.Ed.2d 610 (2000) (quoting *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 60, 108 S.Ct. 376, 98 L.Ed.2d 306 (1987)). Thus, in *Hallstrom*, the Court made it clear that requiring citizen suit plaintiffs to strictly comply with the CWA's notice provision was essential to maintaining the statutory scheme.

While *Hallstrom* established that the CWA's notice requirement must be strictly construed in regards to the parties who had to receive notice (which are listed in the statute itself), the opinion did not address the content of the notice as outlined in the CWA regulation. In *Washington Trout v. McCain Foods, Inc.*, the Ninth Circuit provided additional guidance as to how much information a citizen suit plaintiff must provide to prospective defendants and regulatory agencies. In that case, the district court found that the plaintiffs had failed to comply with the notice requirement because they had neither provided the identities and contact information for the plaintiffs nor specifically identified the dates of the alleged violations. *See Washington Trout*, 45 F.3d at 1352. As a result, the district court dismissed the complaint for lack of subject matter jurisdiction. *See id.* at 1353.

The Ninth Circuit affirmed. Citing *Hallstrom*, the Ninth Circuit observed that courts must apply the CWA notice provision literally. *See id.* at 1354 ("The Court held the notice requirement under the regulations was to be strictly construed."). The Ninth Circuit rejected the plaintiffs' argument that technical deficiencies in the notice do not defeat jurisdiction, concluding instead that a plaintiff must comply precisely with the notice provision in order for the requirement to serve its intended purposes. *See id.* In reaching that decision, the court identified two functions of the notice provision: first, that it gives the parties a chance to resolve their dispute in a "nonadversarial" period; and second, that it alerts the appropriate agency so that "administrative action may initially provide the relief the parties seek before a court must become involved." *Id.*[7]

The court concluded that the plaintiffs' notice failed to advance either of those functions of the notice provision. By neglecting to identify the names and contact information for several potential plaintiffs, the plaintiffs made it impossible for the EPA or the alleged violator to pursue a settlement or an administrative remedy. *See id.* Accordingly, the plaintiffs' notice was insufficient and the district court lacked subject matter jurisdiction. *See id.* at 1354–55. For the purposes of this Order, it is noteworthy that the Ninth Circuit did not directly address the significance of the plaintiffs' failure to specifically identify the dates on which the defendant violated the CWA.

Thus, even after *Hallstrom* and *Washington Trout*, appellate courts have not clearly established the specificity with which a plaintiff must identify in a notice letter the dates on which alleged violations occurred. However, those cases articulated the principles by which a court should

---

**7.** Reading *Hallstrom* and *Washington Trout* in conjunction, then, there appear to be three separate functions of the notice requirement. First, it alerts the appropriate agencies to the purported violations so that those agencies can decide whether to pursue administrative enforcement (the enforcement function). Second, it gives the alleged violator a chance to voluntarily comply with the CWA before facing administrative or judicial action (the compliance function). Third, it gives both the regulatory entities and the alleged violators an opportunity to discuss a potential settlement with all of the interested plaintiffs (the settlement function). The net result of these three functions—enforcement, compliance, and settlement—is to reduce the burden on federal courts by obviating the need for a citizen suit.

evaluate compliance with the notice requirement and outlined the functions served by the provision. *See* note 7 *supra* (describing the various functions performed by the notice requirement as identified in *Hallstrom* and *Washington Trout* ). This Court can survey other nonbinding authority in light of those principles and functions to determine the precision with which a plaintiff must identify violation dates in a notice letter.

Several cases have analyzed the level of specificity with which a plaintiff must list the dates of alleged violations to satisfy the sixty-day notice requirement. Most of those cases have concluded that despite the strict language of *Hallstrom* and *Washington Trout,* a plaintiff does not have to list the precise date for each and every alleged violation. *See, e.g., PIRG of New Jersey,* 50 F.3d at 1247 ("While there is no doubt that such detailed information is helpful to the recipient of a notice letter in identifying the basis for the citizen suit, such specificity is not mandated by the regulation."); *California Sportfishing,* 905 F.Supp. at 799 ("Furthermore, the date or dates of the violation must be stated with some specificity. Ideally plaintiff will identify the precise date. But at the least plaintiff should give a range as to date that is reasonably limited."). On the other hand, a plaintiff cannot simply allege that violations occurred within a broad period of time with no additional information. *See California Sportfishing,* 905 F.Supp. at 800 (holding that a five-year range with no additional limitations failed to satisfy the notice requirement).

Those courts have reached that result for two reasons. First, *Hallstrom* focused on "the timing of the notice, not on its contents." *PIRG of New Jersey,* 50 F.3d at 1249. Similarly, to the extent *Washington Trout* addressed the content of the notice, it focused on the identities of the plaintiffs, information that is either supplied or not supplied, and not on the dates of the alleged violations, which can be provided in varying levels of detail. *See*

*Washington Trout,* 45 F.3d at 1354–55. While those cases establish that the CWA citizen suit notice provision must be interpreted and applied strictly, neither case addressed the specificity with which a citizen suit plaintiff must provide dates of alleged violations. Second, the CWA regulation only requires the plaintiff to provide enough information to permit the recipient to identify the dates of the violations; the regulation does not require the notice itself to contain the relevant dates. *See* 40 C.F.R. § 135.3(a) (quoted *supra* ).

Some courts have been reluctant to require a plaintiff to re-notice violations that occurred or are discovered subsequent to the initial notice. *See PIRG of New Jersey,* 50 F.3d at 1248 (holding that a citizen suit plaintiff does not have to identify the specific date of each alleged violation, particularly for violations that occurred or are discovered after the initial notice). *But see Frilling v. Honda of Am. Mfg., Inc.,* 1996 WL 1619348 (S.D.Ohio 1996) (requiring a plaintiff to file a second lawsuit for violations that occurred or were discovered after the first notice was provided). Similarly, courts have not required a plaintiff to list a specific date for a violation that is premised on the alleged violator's failure to act. *See Natural Resources Defense Council, Inc. v. Southwest Marine, Inc.,* 945 F.Supp. 1330, 1333 (S.D.Cal.1996) (holding that the plaintiff could not—and thus was not required to—allege a specific date for a violator's failure to provide adequate monitoring and reporting plans). In addition, when the relevant agencies and alleged violators have access to the public records which form the basis of the plaintiff's notice, the notice is sufficient to comply with the statute. *See PIRG of New Jersey,* 50 F.3d at 1248–49.

■ Thus, the scope of the CWA notice requirement lies in between the parties' positions. On one hand, a plaintiff cannot simply assert a broad range of dates and force a defendant to guess as to precisely when the alleged violations occurred, particularly when the plaintiff does not identi-

fy the source of its information. On the other hand, a plaintiff is not required to provide in the notice letter itself an exhaustive list of each and every violation and the corresponding dates. Instead, a plaintiff must do what the CWA regulation requires: provide enough information for a defendant to identify the dates of claimed violations. When the plaintiff has gathered the information supporting its suit from the defendant's own submissions to the relevant state agencies and cites those submissions in the notice letter, the plaintiff has satisfied the notice requirement, and a district court possesses subject matter jurisdiction over the case.

■ Here, although it is a close question, the Court has determined that the Friends' notice was sufficient to comply with the CWA regulation. The plaintiff indicated that the violations it identified were based on the defendants' submissions to the Regional Board. The defendants therefore had enough information to determine the precise dates of the alleged violations; indeed, they possessed the very information they now claim to lack. Under those circumstances, the plaintiff should not be forced to list specific dates for all 326 violations identified in the notice. While this Court agrees with the conclusion in *California Sportfishing* that a plaintiff should not be permitted to simply allege a range of dates, the plaintiff's notice here has done more than that by referring to the defendants' self-monitoring data. To the extent the plaintiff's notice does not refer to or rely on the defendants' submissions, the notice is insufficient as to those unreported violations and shall not be entertained by this Court. In other words, the plaintiff's suit will be limited to the violations identified in the defendants' submissions to the Regional Board.

The Court is mindful of the principles established in *Hallstrom* and *Washington Trout* and recognizes that the citizen suit notice provision must be interpreted and applied strictly. However, requiring a plaintiff to specifically list all of the alleged violations and the precise dates of each violation in a notice letter is inconsistent with the balance Congress sought to strike between encouraging citizen enforcement of environmental regulations and avoiding burdening the federal courts with a flood of citizen suits. The enforcement, compliance, and settlement functions promoted by the notice requirement are not advanced by such a strict interpretation of the CWA notice regulation. Indeed, placing such a burden on prospective plaintiffs would excessively undermine citizen suits and discourage alleged violators from complying with the CWA or entering into settlement discussions with plaintiffs. Moreover, limiting the plaintiff's suit to reported violations listed in the defendants' submissions to the Regional Board will preserve the enforcement function of the notice provision, because the state will be able to determine from those reports whether it has prosecuted the specific violations or not.

Accordingly, the defendants' Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction as to the citizen suit notice requirement is DENIED IN PART as to the violations identified in the defendants' submissions to the Regional Board because the plaintiff's notice provides the defendants with sufficient information to identify the dates of those reported violations. However, the defendants' motion is GRANTED IN PART as to any other violations, because the plaintiff's notice does not provide the defendants with enough information to identify the dates of those unreported violations.

### B. The Civil Penalty Bar

■ The defendants also assert that prior, continuing enforcement actions bar the plaintiff's request for civil penalties and deprive this Court of subject matter jurisdiction. Citizen suits brought under section 1365 of the CWA may be barred by section 1319(g)(6)(A), which provides: "[A]ny violation ... (ii) with respect to

which a State has commenced and is diligently prosecuting an action under a State law comparable to this subsection ... shall not be the subject of a civil penalty action" under section 1365. 33 U.S.C. § 1319(g)(6)(A).[8] Thus, for civil penalties to be barred, the Regional Board's enforcement actions against the defendants must be: (1) brought under a state law comparable to the CWA; and (2) commenced and diligently prosecuted.

There is no question that the provision under which the Regional Board fined the defendants is comparable to the CWA. In *Citizens for a Better Environment v. Union Oil Co.*, 83 F.3d 1111 (9th Cir.1996) (*"UNOCAL"*), the Ninth Circuit established that section 13385 of the California Water Code is comparable to the CWA. *See UNOCAL*, 83 F.3d at 1116–17 ("It is undisputed that the penalty provision in [section] 13385 of the California Water Code is comparable to the federal [CWA] penalty provision of 33 U.S.C. § 1319.").

It is also clear that the Regional Board has commenced an action against the defendants for violations of the NPDES permit from May 1993 to July 1997 and is diligently prosecuting that action. Under *Knee Deep*, a state is diligently prosecuting an action when a penalty has been assessed under state law. *See Knee Deep*, 94 F.3d at 516 (noting that the issuance of a cease and desist order by itself without a corresponding penalty is insufficient to constitute diligent prosecution).

Here, the Regional Board has assessed and is continuing to assess penalties under state law for violations from May 1993 to July 1997. CDO No. 97–74 found that the defendants violated their NPDES permit. The TSO established daily penalty provisions for failing to comply with a remedial time line that runs through September 2002. The ACLO issued an immediate $25,000 penalty and two contingent $50,000 penalties for the defendants' anticipated

failure to comply with that remedial schedule. Through these three orders, then, the Regional Board has undoubtedly engaged in diligent prosecution for violations from May 1993 to July 1997.

Indeed, the plaintiff does not seriously dispute that the ACLO bars civil penalty actions for violations from May 1993 to July 1997. Friends argues, however, that the ACLO was limited to violations during that period and does not cover ongoing violations since July 1997. As a result, the plaintiff claims, the Regional Board is not diligently prosecuting violations of the NPDES permit since July 1997. In the plaintiff's view, then, its suit is permissible to the extent that Friends seeks civil penalties for violations after July 1997.

This presents a close question. On one hand, the ACLO does not explicitly assess penalties for violations since July 1997. On the other hand, the Regional Board's orders openly recognized that OCSD and SCWA would have trouble complying with the orders. The Board's TSO anticipated that the defendants would struggle to obtain funding for the improvements and to receive permission from the property owner to perform the necessary construction. The Board noted:

> The SCWA and the OCSD have a lease agreement for their current storage reservoir. The lease will expire in March, 2003. The land owner has not expressed a willingness to extend the lease. The SCWA and the OCSD have investigated many alternatives. No viable solution has become evident. To further compound this situation, the OCSD and the SCWA do not have the financial resources to develop an appropriate storage facility.

RJN, Ex. 3, ¶ 8. Moreover, CDO No. 97–74 indicates that the inadequacy of the treatment plant "threatens to cause future violations," *see* RJN, Ex. 2, ¶ 9, and the TSO

---

**8.** The Ninth Circuit has established that the civil penalty bar operates to deprive a district court of subject matter jurisdiction. *See Knee*

*Deep Cattle Co., Inc. v. Bindana Investment Co., Ltd.*, 94 F.3d 514, 516 (9th Cir.1996).

observes, "It is anticipated that the [TSO] is likely to be violated." *See* RJN, Ex. 3, ¶ 9.

In addition, the TSO establishes and the ACLO assesses penalties for *future* violations of the Board's remedial orders. The TSO outlines due dates for certain tasks designed to cure the plant's violations and sets civil penalties for failure to meet those deadlines through September 2002. Delays beyond the dates specified in the TSO result in additional daily penalties of $1,000. *See id.* at 3; *id.* ¶ 11 (noting that the defendants' failure to comply with the TSO would subject them to additional civil penalties). The ACLO actually assesses penalties for future violations of the TSO; those fines are to be suspended if the defendants satisfy the Board's remedial schedule. *See* RJN, Ex. 4, at 7.

Furthermore, both the TSO and the ACLO are also designed to address *future* violations of the discharge provisions of the NPDES permit itself, and not just the Board's remedial schedule. The TSO was imposed to prevent future violations of the NPDES permit. *See* RJN, Ex. 3, ¶ 9 (noting that the TSO "establishes a time schedule of key actions for the discharger to prevent discharging waste contrary to" the NPDES permit). The ACLO indicates that the remedial schedule is imposed in order to "solv[e] treatment and disposal issues" surrounding the defendants' facility. RJN, Ex. 4, at 7. Thus, because the TSO and ACLO assess penalties for future violations of the Board's remedial schedule and are designed to address future violations of the NPDES permit itself, it is arguable that the state is diligently prosecuting an action against OCSD and SCWA for post-July 1997 violations.

The policy rationales behind the CWA civil penalty bar also support such a reading of the Board's orders. SCWA and OCSD may be doing everything in their power to remedy the problems at the plant despite a dearth of resources, and defending against this litigation may only undermine their ability to improve the plant. In addition, a state environmental agency should not be forced to periodically assess penalties for violations that have occurred since its last compliance order. It is inconsistent with the CWA's deference to state enforcement actions to impose such a requirement on state environmental agencies.

The leading Ninth Circuit opinion defining when a state is diligently prosecuting an action does not provide much guidance. In *Knee Deep*, the Oregon Department of Environmental Quality ("DEQ") entered into a "Stipulation and Final Order" ("SFO") with a discharger. *See Knee Deep*, 94 F.3d at 515. The SFO required the discharger to upgrade the plant at a significant cost. *See id.* Meanwhile, the agreement recognized that the discharger was likely to continue to violate its NPDES permit in the interim and established temporary limits and penalties for exceeding those limits, but it did not assess any penalties for past or future violations, and it explicitly reserved to the DEQ the right to proceed against the discharger for violations not covered by the SFO. *See id.*

The Ninth Circuit determined that the Oregon statute under which the DEQ entered into the SFO was not comparable to the CWA. *See id.* at 516–17. As for whether the state was diligently prosecuting an action, the *Knee Deep* panel merely observed that "a penalty must actually have been assessed under the state law." *Id.* at 516. Without analysis, the court noted that the SFO was entered into before the plaintiff filed suit, "and therefore ... it cannot be said that the state was diligently prosecuting an action at the time [the plaintiff] filed its citizen suit." *Id.* (citing *UNOCAL*).

Neither *Knee Deep* nor *UNOCAL* explain how a district court should determine whether a set of orders like the TSO and the ACLO at issue here constitute diligent prosecution by the state. Those decisions do not address the content of the state's orders; instead, they appear to look only to the timing of the plaintiff's suit relative to the state's decisions. As such, those

opinions seem to ignore the possibility that a state environmental agency might issue orders designed to prevent future violations of an NPDES permit as well as remedy past violations. Such a limited view of a state's orders is inconsistent with the civil penalty bar in the CWA, which is designed to show deference to a state's administrative enforcement actions. It is noteworthy that both *Knee Deep* and *UNOCAL* involved state laws that were not comparable to the CWA penalty provision. Accordingly, those courts were not called upon to evaluate whether the state was diligently prosecuting a violation under a state law that had been determined to be comparable. Those cases leave open the question of whether a series of orders issued by a state environmental agency under a state law comparable to the CWA penalty provision and designed to remedy past violations as well as prevent future violations could constitute diligent prosecution.

As a result, the Court will hold an evidentiary and legal hearing to determine two issues: first, whether the Regional Board's orders in this case were intended to (and in fact will) remedy post-July 1997 violations of the NPDES permit as well as failures to comply with the TSO remedial schedule (the factual issue); and second, whether such orders can constitute diligent prosecution by the state (the legal issue).

The defendants' motion to dismiss for lack of subject matter jurisdiction is therefore GRANTED IN PART to the extent the plaintiff's suit seeks civil penalties for violations from January 1995 (the date identified in the April 11 notice) to July 1997, but is taken under submission pending the evidentiary and legal hearing to the extent the Friends are seeking civil penalties for post-July 1997 violations.

### III. WHETHER THE PLAINTIFF HAS FAILED TO STATE A CLAIM FOR INJUNCTIVE RELIEF

The defendants have also moved pursuant to Rule 12(b)(6) to dismiss the plaintiff's request for injunctive relief for failure to state a claim. The defendants argue that the plaintiff's request should be dismissed because the Regional Board's orders are designed to bring the treatment plant into long-term compliance with the CWA. In the defendants' view, this Court should defer to the Regional Board and give the defendants a chance to satisfy the Board's "well-crafted" orders. According to the defendants, "the capital improvement program imposed by the State represents the only feasible and workable solution to remedy the violations which currently occur at the [OCSD] facility." Motion at 12.

The defendants present no authority that would permit the Court to dismiss the plaintiff's request for injunctive relief at this stage. While the Court may ultimately agree with the defendants that injunctive relief is inappropriate, it is by no means evident that the Court can reach such a determination on a motion to dismiss. Accordingly, the defendants' motion to dismiss the plaintiff's request for injunctive relief is DENIED as premature. The Court will consider the merits of injunctive relief at the appropriate time.

### IV. FUTURE PROCEEDINGS IN THIS LITIGATION

The Court also issues the following orders to move this litigation along quickly. First, the Court will permit the plaintiff to engage in limited discovery regarding whether the Regional Board's prior actions will (or were intended to) remedy future violations of the NPDES permit. Second, at an evidentiary hearing to be scheduled by the Court, the Court will resolve the remaining jurisdictional issue of whether the Regional Board's earlier orders were meant to assess penalties and provide a remedy for violations of the NPDES permit after July 1997 or whether the orders were intended to be limited to violations until July 1997. Third, the parties should submit proposed forms of an injunction.

### CONCLUSION

For the foregoing reasons, the defendants' motion to dismiss the plaintiff's

complaint pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction under the citizen suit notice requirement is DENIED IN PART as to the violations identified in the defendants' submissions to the Regional Board but GRANTED IN PART as to any other violations. The defendants' Rule 12(b)(1) motion as to the civil penalty bar is GRANTED IN PART to the extent the plaintiff's suit seeks civil penalties for violations from January 1995 to July 1997, but is taken under submission pending an evidentiary hearing to the extent the Friends are seeking civil penalties for post-July 1997 violations. The defendants' motion to dismiss the plaintiff's request for injunctive relief pursuant to Rule 12(b)(6) for failure to state a claim is DENIED. Finally, the Court orders the parties to proceed as indicated in Section IV *supra*.

**IT IS SO ORDERED.**