Carl REED, Plaintiff,

v.

FORD MOTOR COMPANY, Defendant.

No. IP 86–134–C.

United States District Court,
S.D. Indiana,
Indianapolis Division.

Feb. 5, 1988.

Mark C. Ladendorf, Townsend Yosha & Cline, Indianapolis, Ind., David L. Perry, Elaine W. Stone, David L. Perry & Associates, Corpus Christi, Tex., for plaintiff.

Wayne C. Kreuscher, Kenneth H. Inskeep, Barnes & Thornburg, Indianapolis, Ind., for defendant.

## ENTRY

BARKER, District Judge.

This matter is before the court on the defendant Ford Motor Company's ("Ford") motion for partial summary judgment, filed November 30, 1987. The plaintiff Carl Reed filed his brief in opposition to the motion on December 30, 1987, and Ford replied on January 12, 1988. The plaintiff and the defendant supplemented their briefs on January 12, 1988, and January 22, 1988, respectively. On January 12, 1988, Ford also filed a motion to strike affidavits and appendices submitted by the plaintiff in opposition to Ford's motion for partial summary judgment. The court reviewed that motion prior to its final consideration of the issues presented by the summary judgment motion and will therefore present its discussion and rulings in that order.

## MEMORANDUM

### I. *Motion to Strike*

In response to Ford's motion for summary judgment on the plaintiff's punitive damages claim, the plaintiff submitted several affidavits, numerous documents, and excerpts of various depositions. Included among those submissions are the affidavits of Melvin Richardson, Harley Copp, and Lynn Bradford, all expected to be expert witnesses for Mr. Reed, and of David Perry, Mr. Reed's lead counsel. Numerous documents are appended to the affidavits.

Ford requests that the court strike these submissions for purposes of ruling on its motion for summary judgment. Although Ford has supplied a sentence-by-sentence critique on the admissibility of the affidavits, several general objections can be distilled and addressed. First, Ford disputes the propriety of the plaintiff's attorney testifying in any manner in this case. Second, Ford argues that many of the statements contained in the experts' affidavits are merely conclusory, speculative, and argumentative, and should be striken because they are not based on personal knowledge. Third, Ford maintains that certain statements should be striken because they are inconsistent with the affiants' deposition testimony. Finally, Ford asserts objections to various statements and documents on grounds of irrelevance, unfair prejudice, hearsay, and failure to authenticate.

■ The defendant's motion to strike is premised primarily on rule 56(e)'s requirement that "opposing affidavits shall be made on personal knowledge [and] shall set forth facts as would be admissible in evidence." Its reading of this requirement is, however, entirely too restrictive and is inconsistent with the court's task at the summary judgment stage. Rule 56(e), it has often been said, "is an enlarging provision as to what may be considered, not a restriction." *Yong Hong Keung v. Dulles,* 127 F.Supp. 252 (D.Mass.1954) (quoted in 10A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2721 (2d ed. 1983)). Furthermore, the rule does not require an unequivocal conclusion that the evidence will be admissible at trial as a condition precedent to its consideration on a summary judgment motion, nor need the evidence be judged on the same basis as evidence offered at trial. *See, e.g., Corley v. Life and Casualty Insurance Company of Tennessee,* 296 F.2d 449 (D.C.Cir.1961); *Securities and Exchange Commission v. American Commodity Exchange, Inc.,* 546 F.2d 1361 (10th Cir.1976).

For these reasons, the court will not exclude evidence at this stage on grounds of hearsay, irrelevance, or undue prejudice. The court must make those types of determinations at trial because "[a]dmissibility of testimony sometimes depends upon the form in which it is offered, the background which is laid for it, and perhaps on other factors as well." *Corley*, 296 F.2d at 450. The court will also not exclude the plaintiff's proffered documents for alleged insufficiencies in authentication, as the parties, subsequent to Ford's motion, filed stipulations which apparently encompass many of these documents[1] and because plaintiff's counsel has represented that he was led by Ford to believe that it would stipulate to the authenticity of the documents. In the event that Ford still challenges certain documents on this basis, the plaintiff should have the opportunity at trial to authenticate the documents.

The court also will not strike the affidavits of the plaintiff's experts for their purported failure to include testimony regarding facts based on personal knowledge. Rule 56(e)'s "personal knowledge" requirement should not be interpreted to exclude expert testimony, as such testimony is often relevant to the issues raised on a summary judgment motion, just as it is often relevant and admissible at trial. *See Bulthuis v. Rexall Corp.*, 789 F.2d 1315, 1318 (9th Cir.1986). Ford, in support of its motion for summary judgment, has proffered the testimony of two of its employees, persons who themselves would probably qualify as experts. They have testified as to the investigative and remedial efforts of Ford in responding to reports of park to reverse incidents. That testimony, Ford maintains, shows that Ford's actions reflected a reasonable, good faith response to the alleged problem. A plaintiff, in attempting to oppose testimony of this type, rarely has an eyewitness to refute such contentions. Rather, the plaintiff may need, and should be entitled, to present expert opinion on what reasonable, good faith investigative and remedial efforts in the industry generally entail. For these reasons, the court denies the motion to strike on this ground. The court observes, however, as the defendant has pointed out, that certain portions of the affidavits merely characterize the defendant's expert testimony and are argumentative. The court therefore does not consider these statements in ruling on the summary judgment motion.

The court further finds that the testimony of the plaintiff's experts should not be striken as inconsistent with their prior deposition testimony. The cited testimony is not directly contradictory to deposition testimony, unlike the testimony addressed in the defendant's cited authority, *Miller v. A.H. Robins Co., Inc.*, 766 F.2d 1102, 1104–05 (7th Cir.1985). Any perceived inconsistencies in the experts' testimony can certainly be pursued by Ford at trial.

Finally, the court notes that attorneys of parties to litigation generally are not proper witnesses, including at the summary judgment stage. Although courts sometimes allow attorneys' affidavits in limited circumstances, attorney statements that merely attest to the truth of the party's evidence are improper. *See, e.g., Equia v. Tompkins*, 756 F.2d 1130, 1136 (5th Cir.1985). In this case, however, it appears that the primary purpose of Mr. Perry's affidavit was to present documents to be considered at the summary judgment stage which he believed would later be the subject of the parties' stipulations. The court, for the reasons noted above, will not strike the plaintiff's documents on grounds of hearsay, irrelevance, undue prejudice, or failure to authenticate. On the other hand, the court will not consider statements in Mr. Perry's affidavit which are argumentative or which attempt to characterize the evidence presented.

For all of the foregoing reasons, the defendant's motion to strike is DENIED. The court, however, will disregard those submissions noted above which it deems improper. Finally, the parties are reminded that the court's rulings on this motion to

---

1. The parties have not informed the court as to which documents objected to in Ford's motion to strike for failure to authenticate are now covered by the parties' stipulations.

strike do not constitute conclusive rulings on the admissibility of this evidence for trial purposes.

## II. *Motion for Partial Summary Judgment*

### A. Mr. Reed's Punitive Damages Claim

Ford has filed a motion for partial summary judgment, maintaining that it is entitled to judgment as a matter of law on the plaintiff's claim for punitive damages. In support of its motion, Ford has offered the deposition testimony of Mr. Alvin Alexandrowicz, supervisor of Ford's steering column and linkage section from 1968 through 1973. In that deposition, Mr. Alexandrowicz outlines the investigations and explorations made in the early 1970's in his section aimed at remedying the reported problem of inadvertent rearward movement in cars equipped with certain Ford transmissions. Mr. Robert Lange, whose deposition testimony has also been proffered by the defendant, was a Ford engineer from 1969 to 1982 who testified that he participated in a Ford task force studying inadvertent rearward movement. He, like Mr. Alexandrowicz, has testified as to the investigative and remedial efforts of Ford during the period prior to the manufacture of the plaintiff's Ford truck. According to Mr. Lange, the task force considered several alternatives but rejected all of them (prior to the 1980 model year) for various reasons.[2]

Based on this evidence, Ford contends that the plaintiff will never be able to meet the stringent standard required in Indiana for the imposition of punitive damages because Ford was not "consciously or heedlessly indifferent" to the complaints it received and because punitive damages would not advance the public policy of Indiana.

Despite the avalanche of paper filed in support of and in opposition to Ford's motion, the question for the court to resolve at the summary judgment stage remains relatively uncomplicated. The court will therefore set out the substantive standard governing punitive damage awards in Indiana, as that standard was articulated in the Indiana Supreme Court's most recent pronouncement, *Orkin Exterminating Co. v. Traina*, 486 N.E.2d 1019 (1986). The court will then apply that standard to the evidence now before the court in light of the procedural standard for summary judgment motions mandated by *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In *Orkin* the Indiana Supreme Court reiterated the holding of *Travelers Indemnity Co. v. Armstrong*, 442 N.E.2d 349 (Ind. 1982), establishing a standard of proof by clear and convincing evidence in the trial of punitive damages claims. This standard is based on the recognition that punitive damages are quasi-criminal in nature and that the defendant in such a case is cloaked with a presumption of innocence which the plaintiff will generally seek to overcome with circumstantial evidence.

The *Orkin* court went on to quote *Travelers Indemnity*:

> [P]unitive damages should not be allowable upon evidence that is merely consistent with the hypothesis of malice, fraud, gross negligence or oppressiveness. Rather some evidence should be required that is inconsistent with the hypothesis that the tortious conduct was the result of a mistake of law or fact, honest error of judgment, over-zealousness, mere negligence or other such noniniquitous human failing.

*Orkin*, 486 N.E.2d at 1023 (quoting *Travelers*, 442 N.E.2d at 362).

Ford advances a number of arguments premised on this language. First, it argues that the plaintiff's evidence at this stage must affirmatively exclude, by clear and convincing evidence, every reasonable hy-

---

2. While at the same time seeking its exclusion, Ford has also raised evidence of its compliance with the requirements of the National Highway Traffic Safety Administration ("NHTSA") as a defense to the punitive damages claim. The question of whether such evidence constitutes a complete defense to common law claims, as well as the preemptive effect of the National Traffic and Motor Vehicle Safety Act of 1966, is addressed *infra* at section II. C. of the court's Entry.

pothesis that Ford's conduct was the result of "mistake of law or fact, honest error of judgment, over-zealousness, mere negligence or other such noniniquitous human failing." Defendant's Reply Brief at 2–5. Second, Ford maintains that Indiana law requires more than a showing of "gross negligence" or "conscious indifference for the safety of others" to support a punitive damages award. *Id.* at 6–10. Finally, Ford contends, based on its review of the plaintiff's evidence, that the plaintiff cannot meet the *Orkin* standard.

With regard to Ford's first argument, its statement of the *Orkin* rule is essentially correct. Its application of that rule, however, evidences a misperception of the court's role in ruling on a summary judgment motion, including a summary judgment motion based on a punitive damages claim. The *Orkin* standard, articulated in the context of *overturning a jury verdict*, could be stated as follows: Was there some evidence which a reasonable juror could have found, by a clear and convincing standard, to be inconsistent with a hypothesis that the defendant's conduct was merely the result of noniniquitous human failing? To grant summary judgment on this issue, a court must decide that the answer to that question could not be anything but "no"— that a reasonable juror could, at most, decide that the defendant's conduct was merely consistent with a hypothesis of "malice, fraud, gross negligence or oppressiveness" but not inconsistent with a hypothesis of noniniquitous human failing. In answering that question, the court cannot weigh the evidence or make other de-

terminations of credibility. The court at the summary judgment stage will also not have the benefit of all the evidence the jurors will actually hear in the context they will hear it. Finally, the court cannot make value judgments that could arise over what constitutes iniquitous or noniniquitous conduct.[3]

The major portion of Ford's reply brief is devoted to a review of the plaintiff's evidence. Ford offers, for much of that evidence, a "noniniquitous" or otherwise innocent hypothesis that a reasonable juror could draw from its conduct. The flaw in this argument for summary judgment purposes is that a conclusion by the court that a reasonable juror could find the positive (that Ford's conduct was innocent) is not the same as a conclusion by the court that a reasonable juror could *not* find the *negative* (that there is no innocent hypothesis reasonably to be drawn from Ford's conduct). The plaintiff's evidence should be viewed only in light of the latter question.[4]

The court need not address directly Ford's contention that "gross negligence" and "conscious indifference" are not sufficient predicates for the imposition of punitive damages in Indiana. Rather, the court will look to that language of *Orkin* which the defendant inexplicably deems "dicta."[5] In *Orkin*, the supreme court recognized that

> [P]unitive damages may be awarded upon a showing of willful and wanton misconduct, and we have no problem with Plaintiff's conception of willfulness and wantonness as not embodying mal-

3. Certainly, this court recognizes that this question is not always within the sole province of the jury, because there is certain conduct, such as that described in *Orkin,* which cannot reasonably be said to constitute more than mere negligence. 486 N.E.2d at 1024.

4. The Seventh Circuit's holding in *J. Yanan & Associates, Inc. v. Integrity Insurance Co.,* 771 F.2d 1025 (1985), does not alter this formulation. In that case, the court noted that the standard generally applicable to the reversal of a jury verdict is in apparent conflict with the Indiana standard for punitive damages because evidence that points in both directions (consistent with wrongdoing or inconsistent with innocence) would normally be enough to uphold a

jury verdict, though not in the punitive damages context. However, the Seventh Circuit noted that "there may be conflicting evidence, pointing in several directions, with evidence on one side inconsistent with innocence.... In [that] case, an award of punitive damages would be justified." *Id.* at 1034. This is precisely the standard this court has articulated.

5. The court is at a loss to see how discussion of a standard in one paragraph, which is applied to *the facts of the case in the next* paragraph, and which forms the basis of the court's explanation of its ruling in the following three paragraphs, can ever properly be characterized as "dicta." 486 N.E.2d at 1023–24.

ice, ill will or intent to injure. Rather, the perverseness that public policy will permit the courts to punish is conscious and intentional misconduct which, under the existing conditions, the actor knows will probably result in injury. *Mazza v. Kelly* (1970), 147 Ind.App. 33, 258 N.E.2d 171; a "conscious indifference," *Hoesel v. Cain* (1944), 222 Ind. 330, 53 N.E.2d 165 (*rehearing denied*); "heedless indifference" and "reckless disregard for the safety of others," *Beeman v. State* (1953), 232 Ind. 683, 115 N.E.2d 919; "reprehensible conduct" and "heedless disregard of the consequences," *Hibschman Pontiac, Inc. v. Batchelor* (1977), 266 Ind. 310, 362 N.E.2d 845.

Thus, to affirm the award, in this case, we must say that by continuing Coleman in his employment, under the circumstances known, Hinkley subjected other persons to probable injury, with an awareness of such impending danger and with heedless indifference of the consequences.

486 N.E.2d at 1023. The court will therefore employ these guidelines as to the basis for an award of punitive damages.

In addition to this substantive standard, the court must be mindful of the impact of the United States Supreme Court's ruling in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In *Anderson,* the Court held:

[A] ruling on a motion for summary judgment pursuant to Fed.R.Civ.P. 56(c) necessarily implicates the substantive evidentiary standard of proof that would apply at a trial on the merits. Therefore, because Indiana law imposes a "clear and convincing" standard for recovery of punitive damages, "the trial judge's summary judgment inquiry as to whether a genuine issue exists will be whether the evidence presented is such that a jury applying that evidentiary standard could reasonably find for either the plaintiff or the defendant."

*Id.* 106 S.Ct. at 2514.

■ A cursory review of the plaintiff's evidence in light of the applicable substantive and procedural framework reveals that

judgment in Ford's favor is improper at this stage. Based on the evidence now before the court, it is impossible to conclude that a reasonable juror could not find, by clear and convincing evidence, that Ford "subjected other persons to probable injury, with an awareness of such impending danger and with heedless indifference of the consequences." *Orkin,* 486 N.E.2d at 1023.

For all of these reasons, the defendant's motion for partial summary judgment on the plaintiff's punitive damages claim is DENIED.

## B. The Plaintiff's "Continuing Duty to Warn" Claims

■ The plaintiff's complaint seeks recovery against the defendant under claims of strict liability, negligence, and punitive damages. As an element in each of these claims Mr. Reed alleges that Ford improperly failed to warn him of the "inherent dangers" associated with the transmission system installed in his pick-up truck. Ford asserts, however, that as a matter of law its duty to warn of any product defects existed only at the time of the sale to the original customer. Because Mr. Reed's complaint acknowledges that he purchased the allegedly defective 1979 Ford pick-up truck in a used condition from Leonard Enlow during 1980, the defendant has now moved for summary judgment on the plaintiff's "continuing duty to warn" claims. Two separate contentions form the basis of the defendant's motion. First, Ford asserts that the Indiana Product Liability Act, Ind.Code § 33–1–1.5–1, *et seq.,* limits to the time of sale the seller's duty to warn of defects in its product. Second, Ford claims that, in addition to statutory limitations, Indiana common law has refused to extend beyond the time of sale a seller's duty to warn. For the reasons set out below, however, the court finds both of Ford's arguments unpersuasive.

The defendant's first argument is fundamentally misdirected. By quoting a series of excerpts from Indiana's Product Liability Act, Ford endeavors to prove that the determination of whether a product is in a "defective condition unreasonably danger-

ous" must be made by looking to the product's condition at the time it left the seller's control. Defendant's Brief in Support at 23. The court, like the plaintiff, has no difficulty accepting the defendant's assertion as true. The point made, however, is irrelevant. Indiana courts have made it clear that, under Indiana statutory law, *two* distinct requirements must be fulfilled before there can be a finding of strict product liability: first, the product must be in a "defective condition unreasonably dangerous" at the time the product is sold; and, second, the seller must fail to give "reasonable warnings" about those dangers. *Ortho Pharmaceutical Corp. v. Chapman,* 180 Ind.App. 33, 388 N.E.2d 541, 551–52 (1979); see also Ind.Code § 33–1–1.5–2.5(a) & (b). In fact, the Indiana Product Liability Act as it is excerpted and quoted in the defendant's brief strongly supports this two-step interpretation of the statute. Ford quotes Indiana Code § 33–1–1.5–2.5:

> (a) A product is in a defective condition under this chapter if, *at the time it is conveyed by the seller to another party,* it is in a condition
>> (1) not contemplated by reasonable persons among those considered expected users or consumers of the product; and
>> (2) that will be unreasonably dangerous to the expected user or consumer when used in reasonably expected ways of handling or consumption.
> (b) A product is defective under this chapter if the seller fails to:
>> (1) [ ...] give *reasonable warnings* about the dangers of the product....

(emphasis added by the defendant). Ford wishes this court to see the limiting phrase "at the time it is conveyed by the seller to another party" as applying to subsection (b) as well as to subsection (a). Yet, the contrary legislative intent is obvious. By including the "time it is conveyed" language in subsection (a) and by segregating the statutory provisions for "reasonable warnings" into a separate, parallel subsection that fails to include similar "time it is conveyed" language, it is clear that the Indiana legislature intended the provisions of subsections (a) and (b) to be distinct and

did not intend to have the time of sale restriction applicable to "reasonable warnings." Therefore, citing authority for the proposition that the unreasonable condition must exist at the time of sale says nothing in response to the second, more crucial question in this case: does the statutory requirement of "reasonable warnings" extend beyond the time of sale? Because the defendant has failed to offer *any* statutory or precedential authority that would indicate that the answer to this second question must be negative, that part of the defendant's motion to dismiss based on the Product Liability Act will necessarily be denied.

Ford further argues, however, that, even if not statutorily restricted, a seller's duty to warn is limited to the time of sale by Indiana common law. Yet, again Ford fails to cite any relevant authority for its assertion. The defendant first draws the court's attention to several cases which hold that a duty "to notify the purchaser" of defects in a manufactured product only arises if the dangerous and unsafe condition exists "at the time it is sold." *Travis v. Rochester Bridge Co.,* 188 Ind. 79, 122 N.E. 1 (1919); *see also Ortho Pharmaceutical Corp. v. Chapman,* 180 Ind.App. 33, 388 N.E.2d 541 (1979). These cases, however, do not address the issue of *when* a manufacturer must "notify the purchaser" of those defects that existed at the time of sale. The defendant then cites yet another case which it asserts holds "that a manufacturer's duty to warn is limited to the time the product *leaves* the seller's possession." Defendant's Brief in Support at 26 (citing *Black v. Henry Pratt Co.,* 778 F.2d 1278, 1284 (7th Cir.1985)) (emphasis by the defendant). A cursory reading of *Black,* however, reveals that it makes no such holding. In *Black* the Seventh Circuit simply recognized that, in Indiana, a ten-year statute of limitations applies to *all* product liability actions. Thus, under *Black,* Mr. Reed's cause of action would be barred if Ford's product had "entered the stream of commerce more than 10 years prior to [his] injury." *Black,* 778 F.2d at 1284. Ford does not allege, however, that Mr. Reed's

cause of action is barred by the statute of limitations. Therefore, the defendant's citation of *Black* is inapposite.[6] Because the defendant has failed to cite any relevant authority in support of its assertion that a seller's duty to warn is limited to the time of sale by Indiana statutory or common law, the court now DENIES the defendant's motion to dismiss the plaintiff's "continuing duty to warn" claims.

### C. The Plaintiff's "Failure to Recall" Theory

As part of his claim for punitive damages, Mr. Reed charges that the "defendant recklessly failed to adequately recall [its] product from the stream of commerce...." Complaint at 8. Ford now posits two arguments in favor of dismissing the plaintiff's "failure to recall" theory. Neither argument need detain the court for long.

First, the defendant expends much energy arguing that "[u]nder the Product Liability Act ... [the] plaintiff is entitled only to damages to compensate him for any injuries proximately caused by any alleged defect. The statute does not provide the remedy of a 'recall.'" Defendant's Brief in Support at 28. One need simply read the complaint, however, to understand that the plaintiff is *not* seeking the "remedy of a 'recall'." Mr. Reed merely alleges that Ford's failure to voluntarily recall its product is but one manifestation of the defendant's recklessness—a recklessness that entitles Mr. Reed to damages. Thus, Ford's argument that this court is not empowered to order a recall is entirely beside the point.

■ Second, "Ford contends that ... state law may not impose liability for failure to take post-sale remedial actions such as a recall ... that are within the jurisdiction of NHSTA...." Defendant's Brief in

Support at 32 n. 2. Ford contends that such state common law liability is preempted by the National Traffic and Motor Vehicle Safety Act of 1966, 15 U.S.C. § 1381 *et seq.* In fact, Ford's brief spends nearly ten pages spinning out its preemption theory. Yet, the first, basic step in a question of federal preemption—as it is in any question of statutory interpretation—is to *read the language of the statute. Blum v. Stenson,* 465 U.S. 886, 897, 104 S.Ct. 1541, 1548, 79 L.Ed.2d 891 (1984). If Ford had taken this step *prior* to filing its motion to dismiss it would have read subsection 1397(c) of the Safety Act. In its entirety that subsection states:

(C) Compliance with any federal motor vehicle safety standard issued under this subchapter does not exempt any person from any liability under common law.

The court finds it difficult to imagine a clearer expression of congressional intent *not* to preempt state common law. Given the unambiguous language of subsection 1397(c) this court has no need to consider the defendant's preemption argument any further.

### III. *Conclusion*

The court will not strike, for purposes of ruling on Ford's motion for summary judgment, the evidence submitted by the plaintiff in opposition to the motion. The court will, however, disregard those submissions it deems improper. The evidence now before the court does not demonstrate that Ford is entitled to judgment as a matter of law on the plaintiff's punitive damages claim, and the defendant's motion on that claim is therefore DENIED.

Because the defendant has failed to present any support for its assertion that a seller's duty to warn does not extend be-

---

**6.** The court notes with displeasure Ford's selective and misleading use of *Black's* language. For instance, Ford quotes *Black* as stating: "It would place an unreasonable duty upon these manufacturers if they were required to trace the ownership of each unit sold and warn annually of new safety improvements." Defendant's Brief in Support at 26. According to Ford, this shows that Indiana's duty to warn is limited to the time of sale. Ford's quotation, however, leaves out the final five words of the opinion's sentence: "over a 35 year period." Thus, when the quoted sentence is read in its entirety, it is clear that the *Black* court was referring to the desirability of a 10-year statute of limitations—not to some common law rule restricting the duty to warn to the time of sale. Such a misleading use of excised quotations by a party—particularly without the use of an ellipsis to indicate the party's selective omissions—is highly inappropriate.

yond the time of sale, its motion to dismiss the plaintiff's "continuing duty to warn" claims is DENIED. Given the clear intent of Congress not to preempt state common law claims such as the plaintiff's, *see* 15 U.S.C. § 1397(c), the defendant's motion to dismiss that part of the complaint based on Ford's failure to recall is DENIED.