## In re BRIDGESTONE/FIRESTONE INC., TIRES PRODUCTS LIABILITY LITIGATION.

### No. IP 00–9373–C–B/S.
### MDL No. 1373.

United States District Court, S.D. Indiana, Indianapolis Division.

July 27, 2001.

Don Barrett, Barrett Law Office Pa, Lexington, MS, Victor Manuel Diaz Jr, Podhurst Orseck Josefsberg & Eaton, Miami, FL, Mike Eidson, Colson Hicks Eidson, Coral Gables, FL, Irwin B Levin, Cohen & Malad, William E Winingham, Wilson Kehoe & Winingham, Indianapolis, IN, for plaintiffs.

John H Beisner, O'Melveny & Myers LLP, Washington, DC, Daniel P Byron, McHale Cook & Welch Pc, Indianapolis, IN, Mark Herrmann, Jones Day Reavis & Pogue, Cleveland, OH, Thomas S Kilbane, Squire Sanders & Dempsey LLP, Cleveland, OH, Mark Merkle, Krieg Devault Alexander & Capehart, Indianapolis, IN, Randall Riggs, Locke Reynolds LLP, Indianapolis, IN, Colin P Smith, Holland & Knight LLP, Chicago, IL, Thomas G Stayton, Baker & Daniels, Indianapolis, IN, for defendants.

### ORDER GRANTING IN PART DEFENDANTS' MOTION TO DISMISS AS TO PLAINTIFFS' EIGHTH CLAIM FOR RELIEF AND RENDERING MOOT IN PART PLAINTIFFS' MOTIONS FOR PRELIMINARY INJUNCTION

BARKER, District Judge.

Pursuant to 28 U.S.C. § 1407, this court has jurisdiction over all pending federal cases concerning alleged defects in specified models of Firestone tires[1] ("the Tires") and in certain automobile models, most notably Ford Explorers. In addition to numerous wrongful death and personal injury cases, the Court also has before it putative class action cases seeking damages and other relief for injuries that various classes of Plaintiffs claim to have suffered as a result of the allegedly faulty tires and automobiles. Plaintiffs' Master Complaint, filed on January 2, 2001, covers these class action cases. Today, we address one part of Defendants' Motion to

---

1. Firestone-brand ATX, ATX II, Firehawk ATX, ATX 23 Degree, Widetrack Radial Baja, Wilderness, "or other comparably designed or manufactured Firestone-brand, steel-belted radial tires" are the subject of this litigation. Master Complaint, ¶ 1.

Dismiss Plaintiffs' Master Complaint. For the reasons set forth below, the Eighth Claim for Relief, insofar as it requests the Court to order a "recall, buy back, and/or replace[ment of] the Tires," Master Complaint, ¶ 300, is *DISMISSED*, pursuant to Federal Rule of Civil Procedure 12(b)(6). This ruling perforce disposes of the request for a recall of the Tires in Plaintiffs' Motion for a Preliminary Injunction, filed on January 29, 2001.[2] For the same reasons, Plaintiffs' Notice of Motion for Preliminary Injunctive Relief Against Defendant Ford Motor Company is also rendered moot to the extent that it asks for "an immediate safety recall, replacement, or refund, at Ford's expense" of all Model Year 1991–2001 Ford Explorers.

██ Finally, because this decision turns on a difficult and controlling question of law as to which there is substantial ground for difference of opinion and because a final resolution of this question may materially advance the ultimate completion of this litigation, the Court sua sponte certifies this order for interlocutory appeal, pursuant to 28 U.S.C. § 1292(b). *See also Ahrenholz v. Board of Trs. of the Univ. of*

*Illinois*, 219 F.3d 674, 677 (7th Cir.2000) (citing *United Airlines, Inc. v. Mesa Airlines, Inc.*, 219 F.3d 605 (7th Cir.2000) as one of few instances where interlocutory appeal is appropriate where *Mesa* involved question of preemption). No stay of the proceedings in this court shall be effected by this interlocutory appeal.

### Preemption Analysis

In their Eight Claim for Relief, Plaintiffs assert that the absence of any adequate remedy at law entitles them to injunctive and other equitable relief. Master Complaint, ¶ 299. Specifically, on behalf of the Tire Class,[3] Plaintiffs ask the Court to order Defendants "to recall, buy back, and/or replace the Tires." *Id.* at ¶ 300.[4]

In support of their motion to dismiss, Defendants argue that Plaintiffs' request for a recall is preempted by the Motor Vehicle Safety Act ("Safety Act"), 49 U.S.C. § 30101 *et seq.* Brief I, Memo. in Supp. of Defs.' Mot. to Dis.: Overview, Reasons to Dismiss All Claims of Plaintiffs Who Have Not Alleged Injury, and Reasons to Dismiss Plaintiffs' Claims for a Court–Ordered Recall (Count VIII) ("Brief I") at 20.[5]

2. In their Motion for a Preliminary Injunction, Plaintiffs ask the Court to lift the stay of discovery ordered by the Court on October 26, 2000. The Case Management Order (January 30, 2001) permitted discovery to go forward. Hence, this request in the motion for preliminary injunction is no longer at issue.

3. Plaintiffs define the "Tire Class" as:
 All persons and entities in the United States who own or lease, or owned or leased, vehicles that are or were equipped with Firestone-brand ATX, ATX II, Firehawk ATX, ATX 23 Degree, Widetrack Radial Baja, Wilderness, or other comparably designed or manufactured Firestone-brand, steel-belted radial tires ("Tires").
 Master Complaint, ¶ 136.

4. Plaintiffs also ask the Court to declare that the Tires are unreasonably dangerous and de-

fective and to order Defendants to "cease and desist from misrepresenting to the Classes and the general public that there is no defect in, or danger associated with, the Tires and Explorers." Master Complaint, ¶¶ 300–02. Plaintiffs further request that Defendants bear the cost of a public awareness campaign concerning the dangers associated with the Tires and Explorers and the cost of any research and testing necessary to retrofit the tires. *Id.* at ¶ 302.

5. Defendants filed their brief in support of their Motion to Dismiss in three parts. Likewise, their Reply is in three parts. Class Plaintiffs' Opposition to Defendants Firestone and Ford's Motion to Dismiss ("Plaintiffs' Opposition") was filed in the traditional format-all in one brief.

The Supremacy Clause preempts any state law that conflicts with federal law. *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992). Once it is determined that the particular state law at issue is preempted by federal law, that state law is "without effect." *Id.* (citing *M'Culloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 427, 4 L.Ed. 579 (1819)). Therefore, if the Safety Act is found to preempt any state law purporting to permit a court-ordered recall, then Plaintiffs' request for a recall must be dismissed pursuant to Rule 12(b)(6) because it would be "beyond ... doubt that the [claimants] cannot prove any facts that would support [their] claim for relief." *Save the Valley, Inc. v. EPA*, 99 F.Supp.2d 981, 983 (S.D.Ind.2000) (quoting *Craigs, Inc. v. General Elec. Capital Corp.*, 12 F.3d 686, 688 (7th Cir.1993)); *see also Travel All Over the World, Inc. v. Kingdom of Saudi Arabia*, 73 F.3d 1423, 1428–31 (7th Cir.1996) (examining defendants' express preemption defense under Rule 12(b)(6) when defendants failed to cite procedural rule in motion to dismiss).

### Proper Stage to Address Preemption Arguments

As a preliminary matter, Plaintiffs argue that the Court should deny Defendants' motion to dismiss their request for a recall on the ground that a dismissal on the basis of preemption at this point in the proceedings would be premature. According to Plaintiffs, determining whether injunctive relief is available while ruling on a motion to dismiss is premature because the Court lacks the benefits of full briefing and an evidentiary hearing on the preliminary injunction motion. We do not share Plaintiffs' view as it applies to the issue of preemption.

Certainly, some courts have delayed ruling on a motion to dismiss when that ruling would necessarily implicate a request for injunctive relief. In *Friends of Fred-erick Seig Grove # 94 v. Sonoma Cty. Water Agency*, 124 F.Supp.2d 1161, 1172 (N.D.Cal.2000), the court conceded that it "may ultimately agree with defendants that injunctive relief is inappropriate," but held that "it is by no means evident that the court can reach such a determination on a motion to dismiss." Likewise, the Court in *American Council of Learned Societies v. MacMillan, Inc.*, 1996 WL 706911, *4 (S.D.N.Y. Dec.6, 1996), declined to dismiss plaintiff's preliminary injunction claims on defendant's motion to dismiss until the court had the opportunity to hold an evidentiary hearing.

However, these cases are readily distinguishable from the situation we face here. The heart of the defendants' argument in *Friends of Frederick Seig Grove*, 124 F.Supp.2d at 1172, was that an earlier settlement order between themselves and a prior plaintiff represented the only workable solution to the environmental hazard facing the new parties, thus necessitating dismissal of a new plaintiff's claim for injunctive relief, which proposed an alternative plan. The court was unwilling to resolve the issue by means of the motion to dismiss because defendants had failed to present sufficient facts for the court to determine whether the plan in the original settlement agreement would in fact solve the environmental problem. *Id.* In *American Council of Learned Societies*, 1996 WL 706911 at *4, the court noted that defendant argued, in support of its Rule 12(b)(6) motion, that plaintiff would not suffer irreparable harm as demonstrated by plaintiff's delay in filing a motion for preliminary injunction. Finding such argument premature and believing that plaintiff would present facts at a preliminary injunction hearing explaining its delay in filing for preliminary injunctive relief, the court rejected defendant's argument that claims for preliminary in-

junctive relief should be dismissed on a Rule 12(b)(6) motion. Thus, both cases cited by Plaintiffs deal with factual issues, a resolution of which warranted full briefing and a hearing on preliminary injunction. Neither case dealt with a preemption issue. In contrast, here, a resolution of the preemption issue is entirely feasible and, indeed, appropriate at this stage. Whether federal law preempts state law-based judicial authority to order a tire or motor vehicle recall is a legal issue, not a factual one. *See Moran v. Rush Prudential HMO, Inc.,* 230 F.3d 959, 966 (7th Cir.2000) ("A district court's preemption ruling is a question of law."). For this reason, Defendants' preemption arguments should be addressed at this stage of the proceedings, *See Brown v. Kerr-McGee Chem. Corp.,* 767 F.2d 1234, 1237 (7th Cir.1985) (upholding district court's decision that federal law preempted injunction based on state law even though there had been no briefing or hearing on injunction).

*Overview of Preemption*

■ The Supreme Court has developed a complex analysis for determining whether a state law is preempted.[6] The starting point in analyzing the scope of a statute's preemption requires that the Court acknowledge that "the purpose of Congress is the ultimate touchstone in every preemption case." *Medtronic, Inc. v. Lohr,* 518 U.S. 470, 485, 116 S.Ct. 2240,

135 L.Ed.2d 700 (1996) (internal quotation omitted). Congress occasionally preempts the operation of state law in the express language of a statute. *See, e.g., Cipollone,* 505 U.S. at 518, 112 S.Ct. 2608 (noting that statutory language "[n]o statement relating to smoking and health shall be required in the advertising of ... cigarettes" expressly prohibited states from mandating particular cautionary statements in cigarette advertisements). Judicial interpretations hold that when Congress has not expressly preempted state law, it may do so through implied preemption, which can take a number of forms. When "federal law so thoroughly occupies a legislative field 'as to make reasonable the inference that Congress left no room for the States to supplement it,' " it is referred to as "field preemption." *Id.* at 516, 112 S.Ct. 2608 (quoting *Fidelity Fed. Sav. & Loan Ass'n v. De la Cuesta,* 458 U.S. 141, 153, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982)). A third form of preemption, "conflict preemption," occurs when requirements of state law and federal law make it impossible for a party to comply with both laws or when state law "prevent[s] or frustrate[s] the accomplishment of a federal objective." *Geier v. American Honda Motor Co., Inc.,* 529 U.S. 861, 873–74, 120 S.Ct. 1913, 146 L.Ed.2d 914 (2000).

■ Determining the intent of Congress is rarely a straightforward undertaking. Presumptions are sometimes used to

---

**6.** Of course, a discussion of preemption presupposes that there is a state law providing for the claim at the heart of the lawsuit. It is not clear that Plaintiffs have met that prerequisite here. Only one case, *Howard v. Ford Motor Co.,* No. 7683785–2 (Cal.Super.Ct. Oct. 11, 2000) has ever granted a plaintiff's request for a recall or other "fix" of a motor vehicle safety defect. Even that case is not persuasive in establishing that California law authorizes a nationwide recall. First, it establishes a right to this remedy only within California. Second, *Howard* does not explain

the reasoning through which it determined that plaintiffs were entitled to a court order requiring Ford to fix the ignition problem at issue.

Defendants argue persuasively that state law does not authorize a recall in the first place, Brief I at 22–23, and Plaintiffs do not directly attempt to refute this argument. While the apparent lack of state law providing for a recall is not central to our conclusion that we have no authority to order a recall, it does lend support to our decision dismissing Plaintiffs' request for a recall.

aid courts in their need to apply vague statutory language to specific questions. In the area of preemption, as Plaintiffs correctly note, "[t]here is a general presumption *against* preemption, applicable to cases involving public health and safety, based on the states' historical primacy in such matters." Plaintiffs' Opposition at 28 (emphasis in original) (citing *Medtronic,* 518 U.S. at 485, 116 S.Ct. 2240); *see also Hillsborough County, Fla. v. Automated Med. Labs., Inc.,* 471 U.S. 707, 715, 105 S.Ct. 2371, 85 L.Ed.2d 714 (1985) (There is a "presumption that state or local regulation of matters related to health and safety is not invalidated under the Supremacy Clause."). However, a thorough analysis of the relevant Supreme Court cases in light of Plaintiffs' request of this highly unusual relief in the form of a recall overcomes the presumption against preemption as a tool to understanding the intent of Congress.

 Both of the cases cited by Plaintiffs as support for their view on the applicability of the presumption against preemption, *Medtronic,* 518 U.S. at 485, 116 S.Ct. 2240 and *Hillsborough,* 471 U.S. at 715, 105 S.Ct. 2371, rely on *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947). In *Rice,* as noted above, the Supreme Court determined that "we start with the assumption that the historic police powers [health and safety] of the States were not to be super-

seded by the Federal Act unless that was the clear and manifest purpose of Congress." *Rice,* 331 U.S. at 230, 67 S.Ct. 1146. Other, more recent Supreme Court cases have emphasized the important distinction observed in *Rice,* though not noted by *Hillsborough, Medtronic,* or by Plaintiffs here. Specifically, in *United States v. Locke,* 529 U.S. 89, 108, 120 S.Ct. 1135, 146 L.Ed.2d 69 (2000), the Supreme Court called attention to the sentence in *Rice* preceding the one quoted by Plaintiffs, as referenced above: "Congress legislated here in a field which the States have traditionally occupied." *See also Buckman Co. v. Plaintiffs' Legal Committee,* 531 U.S. 341, 121 S.Ct. 1012, 1017, 148 L.Ed.2d 854 (2001) (rejecting presumption against preemption when "[p]olicing fraud against federal agencies is hardly 'a field which the States have traditionally occupied.' ") (quoting *Rice,* 331 U.S. at 230, 67 S.Ct. 1146). In *Locke,* 529 U.S. at 108, 120 S.Ct. 1135, the Court went on to say that "an 'assumption' of nonpreemption is not triggered when the State regulates in an area where there has been a significant federal presence."

Hence, determining whether the presumption against preemption applies here turns on whether this area of law is "a field which the States have traditionally occupied" or, conversely, "an area where there has been significant federal presence." [7] On one hand, vehicle safety does

---

7. In the mid–1990s, the Supreme Court expected the analysis in all preemption cases, even those not examining traditional police powers, to start with a presumption of nonpre-emption. *See Medtronic,* 518 U.S. at 485, 116 S.Ct. 2240 ("In *all pre-emption cases,* and *particularly* in those in which Congress has legislated in a field which the States have traditionally occupied, ... we start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.") (emphasis added) (internal quotations omitted). Feder-

alism was the justification for the presumption even when police powers were not at issue. *Id.* ("That approach is consistent with both federalism concerns and the historic primacy of state regulation of matters of health and safety.").

More recent Supreme Court cases appear to have rejected the general presumption, retaining a presumption only when areas typified by state regulation are at issue. *See, e.g., Buckman,* 121 S.Ct. at 1017 (determining that fraud on FDA not subject to any presumption of nonpre-emption because it is not an area of traditional state regulation).

not fit as easily into this category as the subjects at issue in *Buckman*, 121 S.Ct. at 1017 (fraud on the FDA), or *Locke*, 529 U.S. at 108, 120 S.Ct. 1135 (national and international maritime commerce).[8] For certain, vehicle safety is not an area in which "Congress has legislated ... from the earliest days of the Republic." *Locke*, 529 U.S. at 108, 120 S.Ct. 1135. On the other hand, states have never assumed a significant role in *recalls* related to vehicle safety. Plaintiffs cite only two cases to support their contention that "Defendants' preemption argument is undercut by the fact that manufacturers' common law obligations to warn of, remedy, or even improve, defective or dangerous products was recognized prior to the enactment of the Safety Act in 1966, as well as prior to the 1974 'Remedy Without Charge' Amendments."[9] Plaintiffs' Opposition at 29–30. Our review of these cases reveals that they do not support the crucial point of Plaintiffs' argument. In fact, those cases highlight the crucial distinction between what Plaintiffs seek here—a recall—and the relief most other preemption cases address—damages. In *Noel v. United Aircraft Corp.*, 342 F.2d 232, 242 (3d Cir.1964), the court did find, as Plaintiffs note, that the defendant had breached its "continuing duty" to remedy a problem with the propeller system it had supplied. However, the remedy for that breach was neither recall nor replacement, but damages for an accident resulting from the failure to recall or replace. *Id.* *Braniff Airways, Inc. v. Curtiss–Wright Corp.*, 411 F.2d 451 (2d Cir.1969), offers even less support for Plaintiffs' argument. In that case, which sought damages rather than a recall or other injunctive relief, the court declined to adopt the holding of *Noel*. Instead, the *Braniff* court opined that a manufacturer aware of defects in design can either remedy them or "give users adequate warnings and instructions concerning methods for minimizing the danger." *Id.* at 453.

In contrast to the lack of a role on the part of the states in recalls related to vehicle safety, the federal government has a significant history of activity in this area. In 1966, Congress enacted the Safety Act, Pub.L. No. 89–563, 80 Stat. 718. As originally enacted, the statute obligated manufacturers to notify customers of safety-related defects, but did not impose a recall requirement. In 1974, Congress enacted the "Motor Vehicle and Schoolbus Safety Amendments" ("Safety Amendments"), embodying as its most significant changes from our standpoint the provision obligating manufacturers to remedy safety-related defects without charge to consumers and the provision empowering the National Highway Traffic Safety Administration ("NHTSA") to enforce this obligation. Pub.L. No. 93–492, 88 Stat. 1470. With this enactment, recalls formally fell under the purview of the federal agency. Since then, NHTSA has been the key governmental force in negotiating recalls. For example, NHTSA reached settlements establishing the recall of Firestone 500 radial tires in 1978 and Ford ignition switches in

---

8. The only recent Supreme Court case to examine the issue of preemption with regard to the Safety Act is *Geier*, 529 U.S. 861, 120 S.Ct. 1913, 146 L.Ed.2d 914. The majority does not address any presumption of nonpreemption. In fact, the dissent laments the fact that, in its view, "the Court simply ignores the presumption." *Geier*, 529 U.S. at 906–07, 120 S.Ct. 1913 (Stevens, J., dissenting).

9. Defendants refer to these amendments as the "Recall Amendments," Brief I at 28; whereas Plaintiffs use the term " 'Remedy Without Charge' Amendments," Plaintiffs' Opposition at 29. In the interest of neutrality, we shall refer to the 1974 amendments as the "Motor Vehicle and Schoolbus Safety Amendments," as they were called in the legislation itself, or simply the "Safety Amendments."

1996. The total lack of any state-law-based recalls prior to the 1974 Safety Amendments [10] coupled with the significance of federal activity in this area negate the presumption of nonpre-emption that marked the holdings in *Hillsborough* and *Medtronic*.

*Express Preemption and Field Preemption*

Keeping in mind that the presumption against nonpre-emption does not apply in this case, we must next determine whether Congress expressly or impliedly preempted any state law purporting to authorize a recall. We first note that express preemption is not an issue here. Defendants point to no provision of the Safety Act explicitly superseding state-law-based injunctive relief. In addition, while the Safety Act contains an express preemption provision, it is inapplicable to our case. That provision states that "[w]hen a motor vehicle safety standard is in effect . . ., a State . . . may prescribe or continue in effect a standard applicable to the same aspect of performance of a motor vehicle or motor vehicle equipment only if the standard is identical to the standard prescribed under this [Act]." 49 U.S.C. § 30103(b)(1). Though the Department of Transportation has promulgated a number of Federal Motor Vehicle Safety Standards ("FMVSS"), there is no standard that prescribes performance requirements for tires or sets a rollover standard for vehicles.[11]

As to field preemption, it is clear that "Congress in the Safety Act plainly did not intend to occupy the field of motor vehicle safety." *Harris v. Great Dane Trailers, Inc.*, 234 F.3d 398, 400 (8th Cir.2000). However, it is less clear that this general statement is specifically applicable to the issue now before the Court. Such a blanket rule has been cited favorably only in cases in which plaintiffs are seeking damages for injuries or deaths suffered in vehicle accidents.[12] Whether Congress intended to occupy the field with regard to recalls (as opposed to motor vehicle safety standards generally) remains an open question—one we need not address today because the parties focus their arguments on conflict preemption, which the Court finds dispositive.

*Conflict Preemption*

■ Conflict preemption exists where "it is impossible for a private party to comply with both state and federal law and where under the circumstances of a particular case, the challenged state law stands as an obstacle to the accomplishment and

10. In fact, as mentioned earlier, Plaintiffs cite only one case in which a court ruled that a recall was available, rather than simply hypothesizing that a recall is potentially appropriate relief, *see In re General Motors Corp. Pick–Up Truck Fuel Tank Prods. Liability Litig.*, 55 F.3d 768, 811 (3d Cir.1995), or finding that failure to recall is a fitting basis for damages, *see, e.g., Noel*, 342 F.2d at 242. That case is *Howard v. Ford Motor Co.*, No. 7683785–2 (Cal.Super.Ct. Oct. 11, 2000). As *Howard* long post-dates the 1974 Safety Amendments, it does not aid Plaintiffs' argument that motor vehicle recalls were in the purview of state law when Congress entered this arena.

11. *See Geier*, 529 U.S. 861, 120 S.Ct. 1913, 146 L.Ed.2d 914 (2000), for an example of the applicable analysis when a FMVSS covers the alleged defect in question.

12. It is a misunderstanding of precisely this distinction that leads Plaintiffs to cite *Reed v. Ford Motor Co.*, 679 F.Supp. 873, 880 (S.D.Ind.1988), for the proposition that "Congress did *not* intend to preempt the field of auto recalls." Plaintiffs' Opposition at 15 (emphasis in original). As the Court pointed out in *Reed*, 679 F.Supp. at 880, the plaintiff was not seeking a recall, but only damages for Ford's alleged recklessness. *Reed* left open the question of whether the Safety Act preempted a state-law-based recall because it did not need to address the question—the plaintiff was not seeking a recall.

execution of the full purposes and objectives of Congress." *Crosby v. National Foreign Trade Council,* 530 U.S. 363, 372–73, 120 S.Ct. 2288, 147 L.Ed.2d 352 (2000) (internal quotations and citations omitted). These types of conflict typically are referred to as "impossibility" and "frustration-of-purpose," respectively. *See, e.g., Geier,* 529 U.S. at 874, 120 S.Ct. 1913.[13] Defendants' argument focuses on the latter type of conflict preemption. They argue that "[a] parallel, competing system of court-ordered and supervised recalls would undermine and frustrate the Safety Act's objectives of prospectively protecting the public interest through a scheme of administratively enforced remedies." Brief I at 24 (citing *International Paper Co. v. Ouellette,* 479 U.S. 481, 492–95, 107 S.Ct. 805, 93 L.Ed.2d 883 (1987)). We find this contention persuasive.

Two Supreme Court cases address issues particularly applicable to the preemption question now before us. In *International Paper Co.,* 479 U.S. at 497, 107 S.Ct. 805, the Supreme Court found that the Clean Water Act preempted the application of Vermont common law to a New York defendant-polluter. In another case, the Supreme Court determined that the Interstate Commerce Act precluded a shipper from bringing a state-court damages action against a carrier for abandoning a line after the abandonment had been approved by the Interstate Commerce Commission. *Chicago & North Western*

*Trans. Co. v. Kalo Brick & Tile Co.,* 450 U.S. 311, 326, 101 S.Ct. 1124, 67 L.Ed.2d 258 (1981). Both decisions were based on the conclusion that the administrative systems in place for managing the matters at issue in the cases were sufficiently comprehensive that any state law purporting to act in the area was a "serious interference with the achievement of the full purposes and objectives of Congress." *International Paper,* 479 U.S. at 493–94, 107 S.Ct. 805 (internal quotation omitted); *see also Kalo Brick,* 450 U.S. at 331, 101 S.Ct. 1124 (finding that state law action based on different standard for establishing liability for failure to maintain rail line was "plainly contrary to the purposes of the Act").

In both of these cases, the Supreme Court examined a number of factors indicating the comprehensive nature of the federal administrative scheme, some of the most significant of which factors are present here. For example, the Court noted that the Clean Water Act "sets forth the procedures for obtaining a permit [to emit possible pollution] in great detail." *International Paper,* 479 U.S. at 492, 107 S.Ct. 805. The Safety Act likewise sets forth a comprehensive scheme for prospective relief from dangerous features in vehicles. In 49 U.S.C. § 30119, Congress detailed the notification procedure if and when the Secretary of Transportation ("Secretary")[14] determines that a particular vehicle model or its equipment contains a de-

---

13. The distinction between the two types of conflict preemption potentially is useful for determining how a state statute conflicts with a federal law, but a recent Supreme Court majority was careful to point out that the distinction has no significance once either type of conflict is found. *Id.* ("We see no grounds, then, for attempting to distinguish among the types of federal-state conflict for purposes of analyzing whether such a conflict warrants preemption in a particular case."). Indeed, "both forms of conflicting state law

are 'nullified' by the Supremacy Clause." *Id.* at 873 (citations omitted).

14. The statutory provisions at issue here grant authority to the Secretary of Transportation. *See, e.g.,* 49 U.S.C. § 30119. In practice, that authority is exercised through the Administrator of NHTSA. *See* 49 U.S.C. § 105(d) ("The Secretary may carry out chapter 301 of this title through the Administrator [of the National Highway Traffic Safety Administration]."). Hence, the comprehensive scheme created by Congress is in the hands of the agency.

fect or does not comply with other safety standards. *See also* 49 U.S.C. § 30118(b)(2)(A). Among such notification duties to the customer imposed on the manufacturer are "a clear description of the defect or noncompliance," "the measures to be taken to obtain a remedy of the defect or noncompliance," and "the earliest date on which the defect or noncompliance will be remedied without charge." 49 U.S.C. § 30119(a). The manufacturer must send notification about a vehicle problem "by first class mail to each person registered under State law as the owner and whose name and address are reasonably ascertainable by the manufacturer through State records or other available sources." 49 U.S.C. § 30119(d)(1)(A). Details even are included as to how the dealer to whom a motor vehicle or replacement equipment was delivered shall receive notice from the manufacturer. 49 U.S.C. § 30119(d)(4). Similar instructions specify how to remedy defects and noncompliance, even decreeing that "[a] manufacturer shall pay fair reimbursement to a dealer providing a remedy without charge under this section." 49 U.S.C. § 30120(f). The detail contained in the Safety Act suggests a clear congressional intent to limit encroachment on the agency's work. *See Kalo Brick,* 450 U.S. at 321–22, 101 S.Ct. 1124 (in discussion of Congress' desire to block interference with Commission's work, noting that "[t]he Act in fact spells out with considerable precision the remedies available to a shipper who is injured by [the Commission's decisions].").

Another statutory feature indicating congressional intent to preempt state-law-based intrusions into an agency's work is the granting of discretion to the agency in its decision-making. *Kalo Brick,* 450 U.S. at 321, 101 S.Ct. 1124 ("The exclusive and plenary nature of the Commission's authority to rule on carriers' decisions to abandon lines is critical to the congressional scheme, which contemplates comprehen-

sive administrative regulation of interstate commerce."). Similarly, the Safety Act affords the Secretary much discretion to determine the need for notification or remedy of a defect or failure to comply with safety regulations. As an example, the Secretary has the authority to decide that notification by first class mail alone is insufficient and order that "public notice shall be given in the way required by the Secretary" after the Secretary has consulted with the manufacturer. 49 U.S.C. § 30119(d)(2). The Secretary also has authority to disapprove the date set by the manufacturer as the earliest date that parts and facilities reasonably can be expected to be available to remedy the defect or noncompliance. 49 U.S.C. § 30119(b). As long as the Secretary permits public input through established procedures, the Secretary can even "decide [that] a defect or noncompliance is inconsequential to motor vehicle safety," and exempt the manufacturer from providing notification or a remedy. 49 U.S.C. § 30118(d). "The breadth of the [Secretary's] statutory discretion suggests a congressional intent to limit judicial interference with the agency's work" regarding recalls. *Kalo Brick,* 450 U.S. at 321, 101 S.Ct. 1124. NHTSA's broad discretion coupled with the specificity of the sections of the Safety Act dealing with notification and remedies cause us to conclude that Congress intended to establish comprehensive administrative regulation of recalls to promote motor vehicle safety.

Given that there is no presumption against preemption here, the comprehensiveness of the Safety Act with regard to recalls demonstrates convincingly that any state law providing for a motor vehicle safety recall would frustrate the purposes of the Safety Act. To illustrate, as noted above, the Secretary can determine that a defect or noncompliance is sufficiently inconsequential as not to warrant notifica-

tion or a remedy. 49 U.S.C. § 30118(d). Should NHTSA reach this decision about a particular defect or noncompliance, a court ruling essentially "overturning" the Secretary's decision on the basis of state law would obviously upset the congressional intent of leaving the question to an agency with the expertise, experience, and resources to reach sound decisions. *See Kalo Brick,* 450 U.S. at 321, 101 S.Ct. 1124 ("The weight to be given to cost of a relocated line as against the adverse effects upon those served by the abandoned line is a matter which the experience of the Commission qualifies it to decide. And, under the statute, *it is not a matter for judicial redecision.*") (emphasis added) (quotation omitted).

In a more practical vein, the prospect of conflict between judicial proceedings on the basis of state law and action by the agency is patently clear in the information-gathering process envisioned by the Safety Act. The Secretary's decision to exempt a manufacturer from notification or remedy is permissible only after the public has had the opportunity to comment on the situation. 49 U.S.C. § 30118(d). Such detail with respect to the gathering of information necessary to reach a decision about notification and remedy indicates that Congress intended that members of the public bring their concerns to NHTSA, not to the courts. For a court to step in, on the basis of state law, once a member of the public becomes dissatisfied with the progress of the decision-making process at the agency would unnecessarily divert resources and attention from NHTSA and disturb the careful administrative procedure envisioned by Congress. *See Kalo Brick,* 450 U.S. at 322–23, 101 S.Ct. 1124 (pointing out that statute provided disappointed shipper opportunity to take complaints to the Commission).

It is not enough to argue, as Plaintiffs do, that "while the public has waited for NHTSA to act, the death toll from Firestone tires (most of which were mounted on Ford Explorers) has climbed. Thus this Court's exercise of its equitable power is not only available to protect the public from the disastrous Firestone/Ford defect problems—at this juncture it is the only alternative." Plaintiffs' Opposition at 21. We readily acknowledge the moral force behind this argument; nonetheless, it does not change the fact that courts are not authorized to take this step. We must assume its moral force is not lost on NHTSA as well. In the Safety Act, Congress set out a comprehensive scheme for providing prospective relief from motor vehicle safety defects. Delay on the part of NHTSA in reaching a decision is no doubt not what Congress envisioned for dealing with so compelling a situation, but the remedy for that problem lies with NHTSA and Congress and not through some unfounded rescue effort undertaken by the courts.

 Likewise, we are not persuaded by Plaintiffs' argument that because safety is the Safety Act's primary goal, any action that arguably promotes safety is available to the Court. Plaintiffs' Opposition at 21–22. Indeed, as other courts have noted, "Congress['s] declared purpose of the Act [is] as follows: 'to reduce traffic accidents and deaths and injuries to persons resulting from traffic accidents.'" *Buzzard v. Roadrunner Trucking, Inc.,* 966 F.2d 777, 781–82 (3d Cir.1992) (quoting Statement of the Managers on the Part of the House, National Traffic and Motor Vehicle Safety Act of 1966, Conf.Rep. No.1919, 89th Cong., 2d Sess. (1966), *reprinted in* 1996 U.S.C.C.A.N. 2731, 2731). Despite so worthy a goal as safety, the structure that Congress set up to accomplish this goal entrusts it to NHTSA and forecloses judicial interference on the basis of state law— at least as far as recalls are concerned.

Further, "[a] state law also is preempted if it interferes with the *methods* by which the federal statute was designed to reach this goal." *International Paper*, 479 U.S. at 494, 107 S.Ct. 805 (emphasis added) (citation omitted). Here, a comprehensive statutory scheme was created governing a certain method (a recall in our case as compared to a permit system in *International Paper*) designed to promote the goals of the statute. This comprehensive plan preempts a state-law-based recall in the same manner that the permit system in *International Paper* preempted an injured party from suing a polluter on the basis of state law.

Plaintiffs unsuccessfully attempt to undermine the comprehensiveness of the administrative system established by the Safety Act by relying on what they contend to be the combined effect of the express preemption clause and the savings clauses in the Safety Act. Plaintiffs' Opposition at 24–25. Plaintiffs argue that "[i]f an express preemption clause provides 'a reliable indicium of congressional intent with respect to state authority,' it may, in a given case, weigh strongly against a finding of implied preemption." Plaintiffs' Opposition at 25 n. 26 (citing *Freightliner Corp. v. Myrick*, 514 U.S. 280, 288, 115 S.Ct. 1483, 131 L.Ed.2d 385 (1995)). Plaintiffs further argue that the inclusion of two "savings clauses corroborate[s] the Safety Act's preemptive intent." *Id.* at 26.[15]

■ This argument is a non-starter. Certainly, the Supreme Court recognizes the logic of the argument that "an express definition of the pre-emptive reach of a statute supports a reasonable inference that Congress did not intent to pre-empt other matters." *Lorillard Tobacco Co. v. Reilly*, —— U.S. ——, ——, 121 S.Ct. 2404, 2414, 150 L.Ed.2d 532 (2001) (citing *Freightliner Corp. v. Myrick*, 514 U.S. 280, 288, 115 S.Ct. 1483, 131 L.Ed.2d 385 (1995)). However, a "reasonable inference" against implied preemption is not the same as a bar against this type of preemption. In fact, in cases where the Court does not find that the state statute at issue is expressly preempted (unlike *Lorillard*), the Court's analysis continues with an examination of implied preemption, particularly conflict preemption. *See e.g., Freightliner*, 514 U.S. at 289, 115 S.Ct. 1483 (finding no express preemption and ultimately, no conflict preemption); *Buckman*, 121 S.Ct. at 1017 n. 2 (declining to address express preemption, despite presence of express preemption clause, on ground that state law conflicted with federal law).

As recently as last year, the Supreme Court held that a state-law-based claim for damages for failure to provide airbags was preempted because it conflicted with FMVSS 208. *Geier*, 529 U.S. at 874, 120 S.Ct. 1913. The Court reached this conclusion despite the presence of the same express preemption provision and savings clauses at issue here. In doing so, the Court determined that "the saving clause (like the express pre-emption provision) does *not* bar the ordinary workings of

---

15. A "savings clause" generally "exempt[s] from coverage something that would otherwise be included." Black's Law Dictionary. The Safety Act includes two savings clauses in 49 U.S.C. § 30103:

§ 30103(d) **Warranty obligations and additional legal rights and remedies.**—Sections 30117(b), 30118–30121, 30166(f), 30167(a) and (b) of this title do not establish or affect a warranty obligation under a law of the United States or a State. A remedy under those sections and sections 30161 and 30162 of this title is in addition to other rights and remedies under other laws of the United States or a State.

§ 30103(e) **Common law liability.**—Compliance with a motor vehicle safety standard prescribed under this chapter does not exempt a person from liability at common law.

conflict pre-emption principles." *Id.* at 869, 120 S.Ct. 1913. The Supreme Court recently reiterated this instruction in *Buckman,* 121 S.Ct. at 1019 (quoting *Geier,* 529 U.S. at 869, 120 S.Ct. 1913), stating "that neither an express pre-emption provision nor a saving[s] clause 'bars the ordinary working of conflict pre-emption principles.'" Thus, Plaintiffs cannot rely on the express preemption provision or the savings clauses in the Safety Act to create additional obstacles to the argument that any state law purporting to permit a court-ordered recall conflicts with the Safety Act.[16] *See also International Paper,* 479 U.S. at 493–94, 107 S.Ct. 805 (Clean Water Act at issue contained savings clause that Supreme Court found did not undermine comprehensive administrative regulation of water pollution).

### Conclusion

For the reasons set forth above, as to recall of Tires, the Court *GRANTS* Defendants' Motion to Dismiss as it applies to Plaintiffs' Eighth Claim for Relief to the extent it seeks a court-ordered recall. In addition, the Court *DENIES AS MOOT,* in part, Plaintiffs' Motion for Preliminary Injunction, filed on January 29, 2001 and Plaintiffs' Motion for Preliminary Injunctive Relief Against Defendant Ford Motor Company, filed on June 1, 2001. Finally, the Court certifies this order for interlocutory appeal, pursuant to 28 U.S.C. § 1292(b).

16. Nor can Plaintiffs rely on the plain language of the savings clauses to support their case. Section 30103(e) states that "motor vehicle safety standards" are not an obstacle to common law liability. As noted above, there are no motor vehicle safety standards governing tire safety or rollover propensity, so the clause is irrelevant to our action. Section 30103(d) preserves "rights and remedies" existing at the time the Safety Amendments were enacted. Also as discussed above, state law did not provide for recalls in 1974.