Dan KENT, et al., Plaintiff(s),

v.

**DAIMLERCHRYSLER CORPORATION,**
Defendant(s).

No. C–01–3293 JCS.

United States District Court,
N.D. California.

May 8, 2002.

As Amended June 13, 2002.

Robert W. Boatman, Gallagher & Kennedy, P.A., Phoenix, AZ, Elizabeth J. Cabraser, Lieff, Cabraser, Heimann & Bernstein, LLP, San Francisco, CA, Dewitt M. Lovelace, Destin, FL, Scott P. Nealey, Lieff, Cabraser, Heimann & Bernstein, LLP, San Francisco, CA, Kenneth G. Royer, Gallagher & Kennedy, P.A., Phoenix, AZ, Fabrice N. Vincent, Lieff, Cabraser, Heimann & Bernstein, LLP, San Francisco, CA, for plaintiffs.

Kevin J. Dunne, Randall Haimovici, Sedgwick Detert Moran & Arnold, San Francisco, CA, Peter W. Herzog, III, Bryan Cave LLP, St. Louis, MI, Arindam Kar, Bryan Cave, LLP, St. Louis, MO, Charles A. Newman, Bryan Cave LLP, St. Louis, MO, John W. Rogers, Bryan Cave LLP, St. Louis, MO, Paul V. Stearns, Bryan Cave LLP, St. Louis, MO, Wayne A. Wolff, Sedgwick Detert Moran & Arnold, San Francisco, CA, for defendant.

**AMENDED ORDER DENYING WITHOUT PREJUDICE DEFENDANT'S MOTION TO DISMISS UNDER RULE 12(b)(6) FOR FAILURE TO STATE A CLAIM BASED ON PRINCIPLES OF CONFLICT PREEMPTION AND THE DOCTRINE OF PRIMARY JURISDICTION [Docket No. 7] AND GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO STRIKE [Docket No. 44]**

SPERO, United States Magistrate Judge.

Defendant's Motion To Dismiss Under Rule 12(b)(6) For Failure To State A

Claim (Based On Principles Of Conflict Preemption And The Doctrine Of Primary Jurisdiction) ("Motion To Dismiss") and Defendant's Motion to Strike ("Motion To Strike") came on for hearing on Friday, March 8, 2002, at 1:30 p.m. For the reasons set forth below, Defendant's Motion To Dismiss is DENIED without prejudice. Defendant's Motion To Strike is GRANTED IN PART and DENIED IN PART.[1]

## I. INTRODUCTION

This putative class action involves claims based on an alleged defect in model years 1995–1999 Jeep Grand Cherokees. According to Plaintiffs, these Jeeps have a design defect which causes them to self-shift from park to reverse. This alleged defect is the subject of a currently pending investigation by the National Highway Traffic Safety Administration ("NHTSA"). Plaintiffs allege that because of the defect, they are "at undue risk of suffering irreparable physical injuries or death." However, the action explicitly excludes claims for personal injury or wrongful death caused by the alleged defect.

Defendant brings two motions to dismiss for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6). In the first motion addressed in this Order, Defendant asserts that Plaintiffs' claims should be dismissed under the doctrine of preemption or, in the alternative, under the doctrine of primary jurisdiction, because of the ongoing investigation of the same alleged defect by NHTSA. In the second motion, Defendant asserts that Plaintiffs' claims must be dismissed because Plaintiffs have alleged no legally cognizable injury. Defendant also asks the Court to strike various exhibits attached to Plaintiffs' Opposition on the

basis that the exhibits go beyond the pleadings and therefore, should not be considered on a motion to dismiss.

## II. BACKGROUND

Plaintiffs are owners or lessees of model years 1995 to 1999 Jeep Grand Cherokees who are citizens and residents of eleven states, including California.[2] Complaint at 1, 3. According to Plaintiffs, their vehicles have a design defect which creates an "unreasonably dangerous propensity to self-shift from park into reverse." Complaint at 3. Plaintiffs do not allege that they have experienced any such self-shifting. Complaint at 6. Plaintiffs allege that they have been harmed because: 1) they are at "undue risk of suffering irreparable physical injuries or death;" and 2) they have "purchased or leased Jeeps that they would not otherwise have purchased or leased had they known of the defect, and will be forced to repair and replace them at their own cost." Complaint at 3–4. According to Plaintiffs, DaimlerChrysler knew or should have known of the need for proper design of transmissions to ensure that vehicles do not shift from park to reverse because the American auto industry became aware of such problems in the 1970s. Complaint at 4. At that time, NHTSA conducted an investigation of the same type of problem in vehicles produced by Defendant's predecessor-in-interest, the Chrysler Corporation. Complaint at 4. Further, NHTSA is currently investigating the alleged defect at issue in this action. Complaint at 5.

Plaintiffs filed this putative class action on August 28, 2001. Plaintiffs assert the following claims in their complaint:

---

1. Defendant's Motion To Dismiss Under Rule 12(b)(6) For Failure To State A Claim (No Legally Cognizable Injury And Pleading Defects), which came on for hearing on the same day, will be addressed in a separate order.

2. Specifically, Plaintiffs are citizens and residents of the following states: California, Georgia, Florida, Illinois, Tennessee, Alabama, Louisiana, Missouri, Maine, Mississippi, and Oklahoma. Complaint at 3.

Claim One: Violation of Magnuson–Moss Act, 15 U.S.C. § 2310(d)(1);

Claim Two: Breach of Express Warranty;

Claim Three: Breach of Implied Warranty;

Claim Four: Violation of State Consumer Protection Statutes;

Claim Five: Restitution/Disgorgement for Unjust Enrichment.

On October 12, 2001, Defendant filed two motions to dismiss pursuant to Fed. R.Civ.P. 12(b)(6). A hearing date for the motions to dismiss was set for December 21, 2001. However, prior to both hearings, the Court was notified that a motion to transfer had been filed with the Judicial Panel on Multidistrict Litigation ("MDL"). As a result, the December 21, 2001 hearing on the motions to dismiss was vacated pending the MDL ruling. At a January 11, 2002 Case Management Conference, the hearing on Defendant's motions to dismiss was set for March 8, 2002. On January 18, 2002, the MDL panel denied the motion to transfer.

### III. *ARGUMENTS BY THE PARTIES*

In Defendant's Motion to Dismiss Under Rule 12(b)(6) (Based On Principles of Conflict Preemptions and the Doctrine of Primary Jurisdiction), Defendant argues that Plaintiffs' claims should be dismissed because the injunctive relief sought by Plaintiffs is preempted by the Federal Motor Vehicle Safety Act ("the Safety Act"), 49 U.S.C. §§ 30101 *et seq.* The Safety Act vests authority in the Secretary of Transportation to investigate safety-related defects in motor vehicles and, if the Secretary deems it appropriate, to require manufacturers to remedy such defects. Motion to Dismiss at 4. According to Defendant, Plaintiffs' state law claims conflict with the Safety Act because the injunctive relief sought by Plaintiffs would frustrate the objectives of the Safety Act

and interfere with the authority of the Secretary, which has been delegated to NHTSA, to conduct safety-related recalls. Motion to Dismiss at 6–12. Defendant asserts in the alternative that even if Plaintiffs' claims are not actually preempted, the Court should dismiss Plaintiffs' claims under the doctrine of primary jurisdiction. Motion to Dismiss at 13. Under the doctrine of primary jurisdiction, a court may defer to an agency where the issues raised in an action are within the special competence of the agency and/or where there is a possibility of inconsistent rulings.

In their Opposition, Plaintiffs assert that it is premature to consider the type of relief that ultimately may be found appropriate. Plaintiffs further argue that their claims are not preempted by the Safety Act because: 1) the Safety Act's preemption provision only provides for preemption where state safety standards conflict with performance standards established under the Safety Act; 2) the Safety Act contains a "savings clause" which implies that Congress did not intend to preempt state law claims involving design defects; and 3) there is a presumption against preemption where claims involve public safety. With respect to Defendant's argument that the Court should dismiss Plaintiffs' claims under the doctrine of primary jurisdiction, Plaintiffs assert that this doctrine does not apply because: 1) there is no fundamental conflict between the common law and the federal statutory scheme; and 2) the court need not defer to agency expertise because Plaintiffs' claims are within the general expertise of the court.

Defendant argues in its Reply brief that: 1) it is not premature to address preemption at this stage in the litigation because the existence of an actual conflict between the Safety Act and the injunctive relief sought by Plaintiffs is a legal issue rather

than a factual issue; 2) Plaintiffs have missed the point in arguing that there is no express preemption in the absence of a conflicting safety standard because Defendant's preemption argument is based on "implied conflict preemption" resulting from "frustration of purpose" rather than express preemption; 3) the express preemption and savings clauses in the Safety Act do not apply; 4) the presumption of preemption does not apply. Defendant further argues that Plaintiffs are incorrect in their assertion that the primary jurisdiction doctrine does not apply because NHTSA does not have special expertise regarding auto defects and recalls.

Plaintiffs filed a Brief in Further Support of Plaintiffs' Combined Opposition to Defendant's Motion to Dismiss ("Surreply") on January 7, 2002. In their Surreply, Plaintiffs argue that even if the NHTSA investigation does give rise to implied conflict preemption, that preemption only applies insofar as Plaintiffs seek injunctive relief and does not apply to Plaintiffs' claims for compensatory and punitive damages.

Defendant also brings a Motion to Strike. Plaintiffs oppose Defendant's motion to strike as to all but one exhibit, arguing that these exhibits are all legal authority and/or public records of which the Court may take judicial notice. As to the remaining exhibit, the Rosenbluth report, Plaintiffs voluntarily withdrew that exhibit.

## IV. ANALYSIS

### A. Legal Standard

■■■ A complaint should not be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Parks Sch. of Business, Inc. v. Symington,* 51 F.3d 1480, 1484 (9th Cir. 1995). Dismissal can be based on the lack of cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dept.,* 901 F.2d 696, 699 (9th Cir. 1988). On a motion to dismiss, the court accepts the facts alleged in the complaint as true. *Id.* Where a state law claim is preempted by federal law, that claim must be dismissed for failure to state a claim because the claimant cannot prove any set of facts that will support the claim for relief. *In re Bridgestone/Firestone, Inc. Tires Products Liability Litigation,* 153 F.Supp.2d 935 (S.D.Ind.2001).

### B. Preemption

Defendant asserts that this action should be dismissed in its entirety because the Safety Act preempts "Plaintiffs' action for a declaration of defect and a court-ordered notification, recall and repair." Motion to Dismiss at 3. In particular, Defendant asserts that this action is preempted because a court-ordered recall would frustrate the objectives of the Safety Act by interfering with the regulatory framework established under that Act for conducting investigations of motor vehicle defects by NHTSA and, where appropriate, recalls. Motion to Dismiss at 6.

While Defendant may at some later stage in this action demonstrate a sufficiently specific conflict to give rise to preemption, the Court finds that at this stage no such specific conflict has been demonstrated. Therefore, Defendant has not established that Plaintiffs' claims are preempted.

Under the Supremacy Clause, state law that conflicts with federal law has no effect. *Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 516, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992)(citing to Article VI of the U.S. Constitution). However, "courts should not lightly infer preemption." *International Paper v. Ouellette,* 479 U.S. 481,

491, 107 S.Ct. 805, 93 L.Ed.2d 883 (1987). Rather, "[i]n all pre-emption cases, and particularly in those in which Congress has legislated in a field which the States have traditionally occupied, we start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Medtronic, Inc. v. Lohr,* 518 U.S. 470, 485, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996) (quotations omitted).

Courts have found that state law claims are preempted in three types of situations. First, express preemption may be found where Congress has explicitly stated in the statute that state law claims are preempted. *Id.* Second, in the absence of express language indicating an intent to preempt state law claims, implied preemption may be found where "federal law so thoroughly occupies a legislative field as to make reasonable the inference that Congress left no room for the States to supplement it." *Id.* (quotations omitted). Third, preemption may be found where state law "actually conflicts" with federal law. *Id.*

▮ The third type of preemption, conflict preemption, exists where: 1) "it is impossible for a private party to comply with both state and federal law;" or 2) "where 'under the circumstances of [a] particular case, [the challenged state law] stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Crosby v. National Foreign Trade Council,* 530 U.S. 363, 372–373, 120 S.Ct. 2288, 147 L.Ed.2d 352 (2000) (quoting *Hines v. Davidowitz,* 312 U.S. 52, 66–67, 61 S.Ct. 399, 85 L.Ed. 581 (1941)). The latter type of conflict preemption is commonly referred to as "frustration of purpose" preemption. It is this type of preemption that Defendant asserts applies to Plaintiffs' claims in this action.

▮ In determining whether state law is preempted by a federal statute based on frustration of purpose, the court must "be guided by the goals and policies" of the statute at issue. *International Paper Co.,* 479 U.S. at 493, 107 S.Ct. 805. To understand the goals and policies of the statute, the court must, in turn, "examin[e] the [statute] as a whole, its purposes and history." *Id.* In this case, the Court looks for guidance to three cases in which the Supreme Court has held that an action based on state law was barred by conflict preemption: *International Paper; Chicago and North Western Transportation Co. v. Kalo Brick and Tile,* 450 U.S. 311, 101 S.Ct. 1124, 67 L.Ed.2d 258 (1981); and *Geier v. American Honda Motor Co.,* 529 U.S. 861, 869, 120 S.Ct. 1913, 146 L.Ed.2d 914 (2000).

In *International Paper,* Vermont landowners who lived on the shores of Lake Champlain brought a claim under Vermont common law against a paper mill on the other side of the lake, in New York. They alleged that effluent discharged in the lake by the paper mill was a nuisance. *Id.* at 484, 107 S.Ct. 805. The Court held that the plaintiffs' claims were preempted by the Clean Water Act because subjecting a point source to the law of another state affected by the effluent would "render meaningless" the extensive permit program established under the Clean Water Act for regulating the discharge of polluting effluents. *Id.* at 497, 107 S.Ct. 805. The Court explained, "'[d]ischargers would be forced to meet not only the statutory limitations of all states potentially affected by their discharges but also the common law standards developed through case law of those states.'" *Id.* at 496–497, 107 S.Ct. 805 (quoting *Illinois v. Milwaukee,* 731 F.2d 403, 414 (7th Cir.1984)). The Court concluded that Congress could not have intended such a result, noting that "[i]t would be extraordinary for Congress,

after devising an elaborate permit system that sets clear standards, to tolerate common law suits that have the potential to undermine the regulatory scheme." *Id.* The Court noted, however, that a state law action under the law of the state in which the point source was located would *not* give rise to conflict preemption because the Clean Water Act specifically allows states to impose higher standards on their own point sources than are imposed under the Clean Water Act. *Id.* Finally, the Court rejected the plaintiffs' argument that their action did not interfere with the Clean Water Act because they sought only compensatory damages and not injunctive relief. The Court noted, "unless there is evidence that Congress meant to 'split' a particular remedy for pre-emption purposes, it is assumed that the full cause of action under state law is available (or as in this case preempted)." *Id.* at 499 n. 19.

The Court also found conflict preemption based on frustration of purpose in *Chicago and North Western Transportation Co. v. Kalo Brick and Tile,* 450 U.S. 311, 101 S.Ct. 1124, 67 L.Ed.2d 258 (1981). In *Kalo Brick,* a shipper brought an action under Iowa law against a railroad for failure to provide adequate rail service after the railroad abandoned a line. 450 U.S. at 314, 101 S.Ct. 1124. The defendant asserted that the plaintiff's claim was preempted by the Interstate Commerce Act, which delegated to the Interstate Commerce Commissioner the authority to regulate abandonment by carriers. *Id.* at 319, 101 S.Ct. 1124. In fact, pursuant to the authority vested in the Commissioner, the Commissioner had issued the defendant a permit allowing the defendant to abandon the line at issue. *Id.* at 315, 101 S.Ct. 1124. The Court concluded that the plaintiff's claim was preempted, pointing to the extensive regulatory scheme established by Congress under the Interstate Commerce Act. *Id.* at 321, 101 S.Ct. 1124. In reaching the conclusion that the state law

claim was preempted, the Court also pointed to the fact that the Interstate Commerce Act gives the Commissioner broad discretion in determining whether abandonment should be permitted, allowing the Commissioner to balance "the interests of those now served by the present line, on the one hand, and the interests of the carrier and the transportation system on the other." *Id.* (quotations and citations omitted).

In *Geier,* the plaintiff was injured while driving a car that was not equipped with driver-side airbags. 529 U.S. 861, 864, 120 S.Ct. 1913, 146 L.Ed.2d 914 (2000). The plaintiff brought state law claims for damages against the manufacturer, asserting that it should have equipped the car with airbags, even though the safety standard promulgated under the Safety Act did not require the manufacturer to do so. *Id.* The Court began its analysis by examining the express preemption clause in the Safety Act to determine whether or not the action was barred by express preemption. *Id.* at 867. The preemption clause of the Safety Act provides as follows:

(b) Preemption.—(1) When a motor vehicle safety standard is in effect under this chapter, a State or a political subdivision of a State may prescribe or continue in effect a standard applicable to the same aspect of performance of a motor vehicle or motor vehicle equipment only if the standard is identical to the standard prescribed under this chapter. . . . A State may enforce a standard that is identical to a standard prescribed under this chapter.

49 U.S.C. § 30103(b). The defendant asserted that the preemption clause did not bar a state law *tort action* because a tort action does not involve a "safety standard" as that term is used in the express preemption clause *Id.* at 867, 120 S.Ct. 1913. However, the Court declined to reach this

argument, looking instead to the Savings Clause contained in the Safety Act. *Id.* That clause provides that "[c]ompliance with a motor vehicle safety standard prescribed under this chapter does not exempt a person from liability at common law." 49 U.S.C. § 30103. Reading the Preemption Clause and the Savings Clause together, the Court concluded that the Preemption Clause does not bar common-law actions. *Id.* 869, 120 S.Ct. 1913.

Having reached the conclusion that the action was not barred by express preemption under the Preemption Clause, the Court went on to address the question of whether the Savings Clause limited "the operation of ordinary pre-emption principles insofar as those principles instruct us to read statutes as preempting state law (including common-law rules) that 'actually conflict' with the statute or federal standards promulgated thereunder." *Id.* at 869, 120 S.Ct. 1913. The court concluded that it did not, reasoning that nothing in the language of the Savings Clause reflected an intent to save state law actions that conflicted with federal regulations. *Id.*

In order to determine whether conflict prevention applied, the court conducted a detailed analysis of the federal standard in question. The court addressed whether the plaintiffs' lawsuit conflicted with the safety standard setting minimum airbag requirements and concluded that it did. *Id.* at 875, 120 S.Ct. 1913. Looking to the history of the regulation at issue, the Court found that the standard "deliberately provided the manufacturers with a range of choices among the different passive restraint devices." *Id.* This approach was adopted in order to allow for a "mix of different devices introduced gradually over time ... [which would] lower costs, overcome technical safety problems, encourage technological development, and win widespread consumer acceptance—all of which would promote [the standard's] safety ob-

jectives." *Id.* The Court concluded that a lawsuit that required manufactures to install airbags even when the safety standard did not impose such an requirement would frustrate the objective of the federal regulation to encourage manufacturers to employ a variety of passive restraint devices. *Id.* at 881–882, 120 S.Ct. 1913. Therefore, the plaintiff's no-airbag lawsuit was preempted.

*Geier, International Paper,* and *Kalo Brick* are all founded on the same base: a specific conflict will be required to trigger conflict preemption. In *Geier,* the specific structure of the regulation at issue was designed to permit manufacturers to employ devices other than airbags. This conflicted with a state lawsuit seeking to establish liability for *not* installing airbags. In *Kalo Brick,* a federal permit allowing the closure of a rail line conflicted with a state law claim that sought to establish liability based on that closure. In *International Paper,* point source emissions which were lawful under a federal permit could not form the basis of a state law claim that they were unlawful.

■ No such specific conflict is present here—at least at this stage of the case. Defendant asserts that NHTSA has a standard relevant to the transmission problem alleged by Plaintiffs in this action, Federal Motor Vehicle Safety Standard No. 102 (FMVSS 102). 49 C.F.R. § 571.102. Defendant has pointed to nothing, either in the regulation or in the history of the regulation, suggesting that Plaintiffs' lawsuit frustrates the purpose of FMVSS 102. In contrast to the standard at issue in *Geier,* FMVSS 102 does not give manufactures a choice with respect to transmission design. Nor is there any indication that the standard was intended to encourage manufacturers to employ a variety of designs. Indeed, nothing in the language of FMVSS 102 indicates a specific standard with respect to prevention of

an unintended park-reverse shift. Therefore, the Court does not find any actual conflict on the basis of FMVSS 102.

The broader issue raised by Defendant is whether there is an actual conflict between Plaintiffs' claims and the Safety Act because a court-ordered declaration of defect and recall would frustrate the purpose of the Safety Act. *See* Motion to Dismiss at 4–6 (listing numerous federal regulations governing investigation, notification and remediation by NHTSA). Under the Safety Act, the Secretary of Transportation is vested with authority to investigate possible vehicle defects and, where a defect is found, to require that manufacturers notify owners and remedy the defect. 49 U.S.C. §§ 30116—30120. The Secretary, in turn, has delegated authority to NHTSA to carry out these duties. 49 C.F.R. §§ 501.1 and 501.2. Defendant argues that Plaintiffs' action would frustrate the objectives of this regulatory scheme to the extent that Plaintiffs seek a declaration of a defect and a court-ordered recall and repair. At least one court has agreed with Defendant. *See Bridgestone,* 153 F.Supp.2d 935 (S.D.Ind.2001).

In *Bridgestone,* the plaintiffs brought a putative class action under state law alleging that tires on certain automobiles were defective. 153 F.Supp.2d at 937. In addition to seeking damages, the plaintiffs requested that the court order a "recall, buyback, and/or replacement" of the tires. *Id.* The defendants argued that the comprehensive regulatory scheme established for conducting recalls gave rise to conflict preemption *as to the request for a court-ordered recall* only. *Id.* at 938. The Court agreed.

The court in *Bridgestone* first determined that the presumption against preemption discussed in *Medtronic* was not applicable. *Id.* at 940–944. The court concluded that the plaintiffs' claims did not arise in an area in which the State had traditionally regulated. The court pointed to the "total lack of any state-law-based recalls with respect to automobile recalls" prior to 1974, when the Safety Act was amended to provide the Secretary of Transportation with the authority to conduct safety-related vehicle recalls. *Id.* at 943. The court noted that it is questionable whether a court-ordered recall is even available under state law. *Id.* at 942 n. 10. The court further pointed to the fact that since 1974, NHTSA has been the "key governmental force in negotiating recalls." The court concluded that "[t]he total lack of any state-law-based recalls prior to the 1974 Safety Amendments coupled with the significance of federal activity in this area negate the presumption of non pre-emption that marked the holding[ ] in ... *Medtronic.*" *Id.* at 943.

The *Bridgestone* court went on to address whether or not the "comprehensive scheme for prospective relief from dangerous features in vehicles" established under the Safety Act gave rise to an actual conflict with respect to claims seeking a court-ordered recall, and concluded that it did. *Id.* at 944. The court held that "[t]he detail contained in the Safety Act suggests a clear congressional intent to limit encroachment on the agency's work." *Id.* at 945. In support of this conclusion, the court also pointed to the discretion afforded the Secretary under the Safety Act with respect to recalls. *Id.* The court provided three examples of the Secretary's discretion. First, the court pointed out that under 49 U.S.C. § 30119(d)(2), the Secretary may determine that notification by first-class mail—the usual method of sending notice under the Safety Act—is insufficient and require that notice be given by another method. Second, the Secretary "has the authority to disapprove of the date set by the manufacturer as the earliest date that parts and facilities reasonably can be expected to be available to remedy the defect or noncompliance." *Id.*

(citing 49 U.S.C. § 30119(b)). Third, "[a]s long as the Secretary permits public input, the Secretary can even 'decide [that] a defect is inconsequential to motor vehicle safety,' and exempt the manufacturer from providing notification or a remedy." *Id.* (quoting 49 U.S.C. § 30118(d)). The court concluded that in enacting the Safety Act, Congress intended to vest in NHTSA the exclusive authority to investigate vehicle defects and conduct recalls. *Id.* at 945. Therefore, the court dismissed the plaintiffs' state law claims to the extent the plaintiffs sought a court-ordered recall. *Id.* at 938. The court did *not* find that the plaintiffs' damages claims were preempted. *Id.* at 937–938.

Without holding that Plaintiffs' claims in this action could *never* give rise to an actual conflict, the Court does not find that Defendant has demonstrated an actual conflict at this stage of the case. As a preliminary matter, in determining whether there is an actual conflict, it is not appropriate to "split remedies." As the Court noted in *International Paper*, ordinarily it is assumed that the full cause of action under state law is either available or preempted. 479 U.S. at 499 n. 19, 107 S.Ct. 805. Remedies are split only when there is evidence of Congressional intent to treat remedies differently. The Court finds no indication in the language of the Safety Act that Congress intended that actions for injunctive relief should be treated differently from actions for damages. Indeed, if an injunction requiring a

particular repair would "interfere" with the federal regulatory scheme—so too would a damages award based on the failure to make such a repair. Therefore, the Court declines to treat Plaintiffs' request for injunctive relief differently from its request for damages in determining whether or not there is an actual conflict.[3]

■ Defendant asserts that Plaintiffs' claims give rise to conflict preemption because of the "prospect" of conflict between this judicial proceeding and the NHTSA investigation. Motion to Dismiss at 9. A "prospect" of conflict, however, is not sufficient to give rise to preemption based on frustration of purpose. As the Court's decisions in *International Paper, Kalo Brick,* and *Geier* demonstrate, in order to constitute an actual conflict, the state law at issue must conflict with the intent of Congress in a specific and concrete way. In each of those cases, the imposition of liability in an action brought under state law would, in effect, have penalized a defendant for conduct that an agency, acting pursuant to a federal law and based on a careful balancing of policy considerations, had determined should be permitted. As a result, by allowing actions under state law such as those in *Geier, Kalo Brick,* and *International Paper*, courts would have frustrated the purposes of the federal laws at issue in those cases. Here, no such conflict has been demonstrated. At most, Defendant has demonstrated that the relief sought by Plaintiffs *might* conflict with some future action of NHTSA as it investi-

---

**3.** The Court notes that Plaintiffs here do not seek a court-ordered recall, in contrast to the plaintiffs in *Bridgestone*. Rather, Plaintiffs request that the Court "create a fund available to remedy the park-to-reverse defect" and to order Defendant to "bear the cost of notice to Class Members, as approved by the Court, of the availability of funds to remedy the defect." Complaint at 14. This is just the type of relief that the Third Circuit concluded would have been available in *In re General Motors Corp.*

*Pick–Up Truck Fuel Tank Products Liability Litigation,* 55 F.3d 768 (3d Cir.1995) ("*GM Fuel Tank* "). However, the Court need not reach the questions of whether or not a recall is available under state law or whether a presumption against preemption applies in this case, because, as discussed below, even in the absence of a presumption against preemption, Defendant has not demonstrated the existence of an actual conflict.

gates the alleged defect at issue in this action.

Further, the court is not convinced that an actual conflict arises simply because allowing actions such as this one will permit members of the public who are not satisfied with the progress of a NHTSA investigation to seek judicial relief and thereby "divert resources and attention from NHTSA and disturb the careful administrative procedure envisioned by Congress." *See Bridgestone,* 153 F.Supp.2d at 946. Indeed, the Savings Clause of the Safety Act explicitly allows members of the public to do just that on an individual basis, even though the same argument could be made with respect to such actions. Rather, the case law discussed above shows that a much more specific type of conflict must be demonstrated in order to support a finding of conflict preemption. Because Defendant has not demonstrated that such a conflict exists, the Court finds that Plaintiffs claims are not preempted by the Safety Act, at least at this stage of the case.[4]

## C. *Primary Jurisdiction*

Defendant argues in the alternative that Plaintiffs' claims should be dismissed—or at least stayed—pending the completion of the NHTSA investigation on the basis of the doctrine of primary jurisdiction. The Court declines to apply the doctrine of primary jurisdiction at this time.

The Supreme Court has described the doctrine of primary jurisdiction as follows:

> The doctrine of primary jurisdiction is concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties. Even when common-law rights and remedies survive and the agency in question lacks the power to confer immunity from commonlaw liability, it may be appropriate to refer specific issues to an agency for initial determination where that procedure would secure (u)niformity and consistency in the regulation of business entrusted to a particular agency or where the limited functions of review by the judiciary (would be) more rationally exercised, by preliminary resort for ascertaining and interpreting the circumstances underlying legal issues to agencies that are better equipped than courts by specialization, by insight gained through experience, and by more flexible procedure.

*Nader v. Allegheny Airlines, Inc.,* 426 U.S. 290, 303–304, 96 S.Ct. 1978, 48 L.Ed.2d 643 (1976) (citations omitted).

■ Here, the Court does not find that exercise of the doctrine of primary jurisdiction is necessary at this stage of the case, either to ensure uniformity of regulation or because NHTSA is better-equipped than the Court to address the issues raised by Plaintiffs' claims. First, because Plaintiff does not challenge a safety standard or any NHTSA regulation, and because Defendant has not identified any specific conflict between this action and the on-going NHTSA investigation of the same problem, the need for "uniformity and consistency in the regulation of business" does not justify application of the doctrine of primary jurisdiction at this time. *See id.* at 304, 96 S.Ct. 1978 (holding that consideration of uniformity did not justify invoking primary jurisdiction doctrine where plaintiff did not challenge any regulation or practice of the agency). Second, the Court does not find that Plaintiffs' claims raise "issues of fact not within the conventional experience of judges." *See Far East Conference v. United States,* 342 U.S.

---

4. Because the Court does not find an actual conflict, the Court does not reach the issue of whether Plaintiffs' claim under the Magnu-

son–Moss Act, which is a federal statute, may be preempted by *another* federal statute.

570, 574, 72 S.Ct. 492, 96 L.Ed. 576 (1952) (holding that claims had to be brought before agency before court could consider them because their resolution required "a high degree of expert and technical knowledge" and the agency therefore would be better able to deal with these issues). Rather, the state law claims brought by Plaintiffs are "within the conventional competence of the courts." *See Nader,* 426 U.S. at 305, 96 S.Ct. 1978. Therefore, based on the record that is currently before this Court, the Court does not find that the issues raised by Plaintiffs in this action need be addressed by NHTSA before this Court can consider them.

### D. *Motion To Strike*

Defendant brings a Motion to Strike, requesting that the Court strike from the record seven exhibits—as well as any arguments that refer to those exhibits—that were filed by Plaintiffs' in support of their Opposition to Defendant's Motion to Dismiss. *See* Declaration of Scott P. Nealey In Support of Combined Opposition to Defendant's Motion to Dismiss ("Nealey Decl."). Defendant asserts that the Court should strike these exhibits because they are outside the pleadings and therefore, may not be considered on a motion to dismiss. *See* Motion to Strike (citing *Branch v. Tunnell,* 14 F.3d 449, 453 (9th Cir.1994)). The Court grants in part and denies in part Defendant's Motion to Strike.

■ Plaintiffs attached seven exhibits to the Nealey Declaration. Two of these exhibits, Exhibits C and D, are legal decisions by California courts. Because these decisions are matters of public record, the Court may take judicial notice of them pursuant to Fed.R.Evid. 201. *Lee v. City of Los Angeles,* 250 F.3d 668, 689 (9th Cir.2001). Similarly, the Court may take judicial notice of Exhibit E, which is a legal memorandum filed in a state court action, on the basis that it is a public record. *See id.* Therefore, the Court denies Defendant's Motion to Strike with respect to these three exhibits.

■ On the other hand, Plaintiffs concede that Exhibit B, an investigative report by an automotive consultant concerning the existence of a design defect in Jeep Grand Cherokees, constitutes evidence that is not appropriately considered on a motion to dismiss. Therefore, Defendant's Motion to Strike is granted with respect to Exhibit B.

Because the Court does not rely on the remaining exhibits—Exhibits A, F and G, the Court declines to rule on Defendant's Motion to Strike as it relates to those exhibits.

### V. *CONCLUSION*

For the reasons stated above, the Court DENIES without prejudice Defendant's Motion to Dismiss. The Court GRANTS IN PART and DENIES IN PART Defendant's Motion to Strike.

IT IS SO ORDERED.